## Williams v. Commonwealth.

March 25, 1947.

J. B. Johnson, Judge.

360

Leonard S. Stephens for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant was convicted of the offense denounced by KRS 435.170(2), wilful and malicious cutting, striking or stabbing of another with a knife or other deadly weapon with intent, etc., and given a sentence of imprisonment for two years, the minimum penalty. On appeal it is contended that his rights were substantially prejudiced by the failure of the court to instruct the jury on the effect of his claim that he had abandoned the admitted difficulty; (2) to define by instruction the term "deadly weapon," and (3) in erroneously giving instruction No. 2 on self-defense, and lastly that the verdict is flagrantly against the evidence.

In a general way the evidence shows that appellant and Washam, the chief prosecuting witness, were rival taxi drivers. At the time of the encounter (about 7:00 p. m., July 17, 1946) both were at the bus station in Stearns, seeking passengers. A lady and two children alighted from the bus, and Washam placed them in his cab and drove past the bus, and saw two other passengers with whom Williams was talking. Washam said he thought they were walking away, and he stopped and blew his horn. Williams resented this and told Washam to "go on and mind his own business; I am talking to these people." Washam said that when he replied "this is a free country," Williams came to his cab, reached through the right door and struck him on the jaw. Washam turned his key and set his brake, and while he was doing so Williams hit him again on his face. He said he then got out and went to the left side and rear of his car, where the two met, and Williams "went to cutting on me." At the same time, said Washam, Williams' son grabbed him, and the two "would take time about hitting me in the face and the other cutting me."

The doctor to whom Washam went for attention, found at least a dozen cut places on his chest and back, both lacerations and stab wounds, some of which latter penetrated to a depth of ¾ of an inch through the fleshy portions of the body. Two of the lacerations required five or six stitches.

Washam says that he did not strike Williams when he was hitting him while in the car; that after he set his brake Williams had walked to the back of his (Washam's) car, and he got out and went toward him, saying he "didn't want his passengers to be in danger." He said he thought Williams had a gun, and "he was coming to get me," and the two met about the left rear fender. He insists that he did not grab Williams who began to assault him before he had a chance to do anything.

A witness, who was present and trying to assist Washam, describes the rencounter in substantially the same way as had Washam, though he comes near making the final melee a mutual combat, then a free for all fight with four or more persons engaging. Another witness, who was not involved, testifies to about the same, but

says that when Washam got out of his car, and started back toward the rear, Williams met him about half way. This witness thought he saw the knife in Williams' hand. One of Washam's passengers testified, but chiefly as to what occurred before Washam got out of his car; she left while the fight was in progress. Another eyewitness says that when Washam got out of his car, the two came toward each other; met and went into the fight. The knife was taken from Williams by the jailer who described it as a black handle two bladed knife, the one blade about 3 inches long.

Williams testified that he was "dickering" with two passengers, when Washam pulled his car up near his, and solicited them to go with him, and he, Williams, asked him to "keep his bill out of my business." He admits that he went to Washam's car, but "I couldn't say whether I hit him or not. If I did I don't remember." He then went to the back end of Washam's car, toward his own car, and as he started back Washam met him, and made a motion toward his shirt or sweater pocket and said, "I ain't going to be done that way, and we tangled up." He said he thought his life was in danger, and "I tried to cut myself loose from him." He could not say at what time he got his knife from his pocket, and he says the blade he used was "probably two inches long." He admitted he got mad when Washam tried to solicit the two passengers.

Another taxi driver testified that as the two met, "Williams drew his hand back, and said, 'Buddy you had better be careful or you'll be sorry.'" He said Washam ran his hand in his pocket, or probably had his hand in his pants pocket, as Williams hit him or pushed him. They then passed around the car out of his sight.

We take up first the contention that the court failed to define "deadly weapon," words used in the indictment and instructions, both of which also include the word "knife," in describing the instrument used. Counsel argues that the proof shows that the weapon used was an ordinary pocket knife, and that the rule laid down in Angel v. Com., 289 Ky. 281, 158 S. W. 2d 640, applies here. That rule is to the effect that where the weapon is of such character as to admit of but one conclusion as to character, the question is one of law; but where the

weapon employed is such that its deadly character depends upon the manner and circumstance of its use, the question is one for the jury. In that case the injury was caused by the striking of the victim with the handle of a pistol, and we have applied the rule as in other cases cited by appellant, where the instrument used was a club, rock or the like. It is a matter of common knowledge that the use of a knife may produce death even though the stab or thrust does not reach a vital portion of the body. Aside from this the Legislature, in denouncing the crime (statute supra) has stamped a knife as a deadly weapon. The court did not err in failing to define deadly weapon.

It is contended that instruction No. 2 was erroneous. Technically it may have been, but it was not prejudicial. This instruction told the jury that if they believed from the evidence to the exclusion of a reasonable doubt that the cutting was in sudden affray "and not in self-defense," they should find him guilty of a misdemeanor. The contention is that the court omitted the words "and not in his necessary or apparently necessary self-defense." Counsel cites in support Brinegar v. Com., 285 Ky. 400, 147 S. W. 2d 1037. We held there, that while the instruction should have incorporated the words which were omitted, the error was not prejudicial because in both the first instruction and the self-defense instruction, the proper words were incorporated. In this case the first instruction did not contain the omitted words. However, the instruction on self-defense advised the jury that if at the time of the cutting, "defendant believed, and had reasonable grounds to believe and did believe that he was then and there in imminent danger, etc.," he had the right to use such means as appeared to him in the exercise of a reasonable judgment to be necessary to avert the danger, etc. This instruction as given relates to both the felony and misdemeanor instructions. The rule is that instructions must be considered as a whole, and error in one may be cured by another which correctly exemplifies the applicable law. Voils v. Com., 229 Ky. 305, 17 S. W. 2d 238; McClain v. Com., 284 Ky. 359, 184 S. W. 2d 816; Cupp v. Com., 208 Ky. 231, 270 S. W. 774, the latter being directly in point. Under these authorities we conclude that the technical defect was fully cured by the self-defense instruction.

The next contention is that the court did not give the whole law of the case, it being urged that under the proof the court should have given a concrete instruction based upon appellant's contention that he abandoned the primary difficulty, and was pursued and attacked by Washam, under which circumstances the "appellant had the right to repel the attack." As we read the proof the court might have been justified in giving such an instruction, provided only if the court, as the proof fully authorized, had coupled with or given separately, after the self-defense instruction, an approved instruction advising the jury that appellant could not be excused on the ground of self-defense if he instigated the difficulty.

Counsel for appellant fails to direct us to a case wherein we have held it reversible error to omit the abandonment instruction per se, and our search has failed to reveal one. Counsel cites as authority Young v. Com., 42 S. W. 1411, commenting that we there held fatal error in the court's failure to "tell the jury that if they believed from the evidence that appellant had abandoned the conflict and the person first assaulted pursued and attacked or renewed the conflict, from that time forward appellant had the right to repel the attack "and defend himself."

A cursory examination of that case discloses that we correctly said that where the court instructs the jury that the right of self-defense could not prevail if appellant brought about the difficulty, it was reversible error not to follow with the abandonment instruction. This was what the court has since held in Jackson v. Com., 257 Ky. 75, 17 S. W. 2d 380, and Collett v. Com., 272 Ky. 69, 113 S. W. 2d 861, and others that might be cited, and where we reversed principally upon like failure.

Granting that the facts of this case would have required the abandonment instruction, had the bringing on the difficulty instruction been given (and there is no doubt that the latter instruction could have been properly given), since it is not denied that Williams first assaulted Washam, the giving of the former without coupling the latter would have been erroneous. The giving of the bringing on the difficulty instruction would have handicapped appellant, and it may be seriously doubted that the abandonment instruction would have benefitted

since there was no doubt as to who began the encounter, but under the proof there might have arisen in the minds of the jury a serious doubt as to a good faith abandonment by appellant. Our view of this phase leads to the conclusion that appellant's rights were fairly protected under the correctly given self-defense and reasonable doubt instructions.

The contention that the proof was such as to show that Williams acted in his self-defense needs little comment. The case developed was just another of our numerous cases where the accused admits the infliction of the injury, but claims the right of necessary self-defense. In such cases it is, as we have so often held, incumbent on the accused to convince the jury by his evidence that the act was excusable. This question was submitted to the jury by appropriate instructions and they found otherwise; we only reverse where we are clearly of the opinion that appellant has made good his defense by clear and convincing proof, which is not the case here.

Judgment affirmed.