John TERRY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 15, 1971.

Warren N. Pope, Ashland, for appellant.

John B. Breckinridge, Atty. Gen., James B. Wooten, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

John Terry was convicted of armed robbery, as denounced by KRS 433.140. His punishment was fixed at imprisonment for ten years. He prosecutes this appeal from that conviction, asserting as charges of error that (1) the trial court erred in permitting evidence of other crimes by the accused; (2) prejudicial error occurred in connection with impeachment of a witness for the appellant; and (3) the court failed to instruct on the whole law of the case.

According to the evidence for the Commonwealth, Cloyd Vance, a man then seventy-seven years of age, was lying on his bed napping at about dusk on August 28, 1970. Vance said he was aroused to find a man with a club, or some other object wrapped in a brown cloth, standing over him. The intruder struck Vance seven or eight times on the head and upper part of his body with the club or other object and then ran from the room, taking Vance's pants which contained items of personal property. Vance testified that he was able to recognize the appellant as being the man who committed this offense. He explained that he knew the appellant because appellant had been at his home on March 28, 1970, and had wanted to do some work on a car for Vance. So far as appears in the record, this was the only occasion that Vance and the appellant had ever seen each other. Appellant denied that he had ever seen or known Vance.

The appellant presented an alibi as his defense, stating that he was in Ironton, Ohio, on August 28, 1970, when the crime was committed. He presented two witnesses who corroborated him in that respect and whose testimony will be mentioned later.

The appellant undertook to refute Vance's claim that he had met the appellant on March 28, 1970, and as a part of that effort at refutation testified that he, the appellant, was in jail on March 28, 1970, and, therefore, could not have been the man who visited Vance on March 28. The keeper of the Ashland jail testified that appellant was incarcerated in that jail from midmorning of March 25 to nearly noon on May 18, 1970. In cross-examining the jailer, the Commonwealth's attorney was permitted to show, over objection, the charges for which appellant had been in the Ashland jail. The jailer testified:

"He (appellant) was charged with fraudulent use of a credit card, forgery, and drinking in public."

The trial judge, in overruling the objection to the questioning along that line, had stated that the testimony would be admitted only for the purpose of affecting the credibility of appellant, if it did so.

On cross-examination of the appellant, the Commonwealth brought out that appellant had been sentenced for a misdemeanor and served time in the Ashland jail and that the offense was the fraudulent use of a credit card that belonged to Cloyd Vance. Appellant insisted that he "got the card from one of Vance's girl friends in Ironton, where he is familiar, from a girl that loafs in the place called the Corner Lunch over there where he is a frequent patron, so they tell me." Obviously, the introduction of evidence of charges of intoxication and other misdemeanors is not a proper method for impeachment in the usual circumstances. CR 43.07.

Appellant himself injected into the case the fact of his confinement in jail in an effort to refute Vance's testimony that appellant had been at Vance's home on March 28, 1970. It therefore became appropriate for the prosecution to show that appellant's confinement was on a conviction of the fraudulent use of Vance's credit card, since that circumstance would warrant an inference that appellant had been at Vance's home at another date shortly before March 28, 1970. Upon another trial of this case, the prosecution will not be permitted to present evidence of any other charges of misdemeanors incident to appellant's imprisonment in the Ashland jail.

One of the alibi witnesses presented in behalf of the appellant was a young female named Mayme Gullett, who testified that she was in Ironton, Ohio, on the evening of Friday, August 28, 1970, at a place called "The Wheel Cafe" and that the appellant was there from 6 p. m. until the place closed at 1 a. m. On cross-examination Mayme Gullett was asked whether she knew Dale Gee, David Russell Kelley, and Kenneth Simmons. She admitted that she knew these individuals, whereupon the following questions and answers appear in her cross-examination:

"Q 16. Where is Dale Gee now?

A. He is in jail.

Q 17. Where is Kenneth Simmons?

A. He is in jail.

Q 18. Where is David Russell Kelley?

A. He is in jail."

It is to be observed that Simmons, Gee, and Kelley are not otherwise identified as having any relevant or pertinent connection with the crime for which appellant was tried. The trial court overruled the objections presented by appellant's counsel to this line of interrogation and admonished him that he would have a "continuing objection."

The effect of this line of questioning was somewhat compounded by the remarks of the prosecuting attorney in his closing argument:

"I didn't know who they was going to bring from Ironton this time but I expected something and we were ready for her and her company is Kelley, Simmons, that type of character, and I can tell you every one of them that I named that she knew are just rotten to the core. I can look right in your eye and say that. * * We are not going to permit anybody to hurt that man or hurt you in your home and for him to come in here after this man identifies him and says, I was over in Ironton, one of the joints over there. I met so and so over there and there was a lot of other people over there knew me that night and they bring this little old girl in here and I am not talking about her in the sense of the word that I mean to mistreat her but she is just exactly what you are thinking."

CR 43.07, which is applicable in criminal prosecutions, sets out the permissible means for impeaching a witness. It does not include the techniques employed here. Bringing up the fact that Mayme Gullett, an admitted habitue of an Ironton beer joint, was acquainted with three individuals who happened to be in durance vile at the time of the trial was simply an effort to discredit her testimony by means beyond the pale of permissible inquiry. When the prosecutor gratuitously informed the jury that he, as a public official of the community, knew of his own personal knowledge that the named individuals of whom Mayme Gullett spoke were "rotten to the core," he overstepped the boundary of propriety. The only defense that the appellant offered was his claimed alibi. He presented witnesses whose admitted activities on the night in question might be characterized as unsavory. It is possible, however, that appellant really was at The Wheel and, if so, that he would necessarily have to bring the usual patrons of such an establishment to prove it. He was entitled to have his case tried without the Common-

wealth's unauthorized assault upon one of his alibi witnesses.

The appellant contends that the court erred in failing to instruct on common-law robbery. This argument is premised on the claim that the jury could have found that a deadly weapon was not used, as required for conviction under KRS 433.140. Indeed, the trial court instructed the jury that it must believe beyond a reasonable doubt that the club or instrument used was a deadly weapon as a predicate for conviction. The term "deadly weapon" was defined, but the only options left to the jury were to render a verdict of acquittal or guilt of armed robbery. The victim testified that the weapon used by his assailant was wrapped in brown cloth and that "it felt like a piece of steel or something" when he was struck with it. Vance also told of severe bruises and a cut which resulted from the several blows he received.

■■ In some circumstances there is no issue as to whether the instrumentality was a deadly weapon. In such a case the court is not required to define "deadly weapon," nor is the jury required to make such a finding to convict of armed robbery. For example, see Mason v. Commonwealth, Ky., 396 S.W.2d 797; Montgomery v. Commonwealth, Ky., 346 S.W.2d 479; and Williams v. Commonwealth, 304 Ky. 359, 200 S.W.2d 926. However, it would seem to follow that unless the evidence shows beyond question that the device used in the alleged robbery was a deadly weapon, the trial court should instruct on common-law robbery, the punishment for which is prescribed by KRS 433.120. See Chadwell v. Commonwealth, 305 Ky. 422, 204 S.W.2d 577, for example.

■ Thus, it appears anomalous in any case to submit to the jury the issue as to whether a deadly weapon was used without instructing on the offense of robbery, as proscribed by KRS 433.120. It is not necessary to determine whether the evidence was sufficient to justify a ruling that the instrument used was, as a matter of law, a deadly weapon. Upon another trial, the court will first determine whether the evidence establishes that the instrument used was, as a matter of law, a deadly weapon. If so, an instruction under KRS 433.130 will be given, without submitting to the jury any issue as to the character of the weapon used. If, on the other hand, the court concludes that a jury issue is generated as to whether a "deadly weapon" was used, then the court will submit that issue to the jury along with an instruction affording basis for conviction under KRS 433.120, if the jury finds that a robbery was committed without the use of a deadly weapon.

The judgment is reversed for proceedings consistent with the opinion.

MILLIKEN, C. J., and NEIKIRK, OSBORNE, PALMORE, REED and STEINFELD, JJ., concur.