For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

Irvin C. ROWE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1999–CA–002300–MR.

Court of Appeals of Kentucky.

July 6, 2001.

Paul J. Neel, Jr., Louisville, KY, for Appellant.

A.B. Chandler, III, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Frankfort, KY, for Appellee.

Before HUDDLESTON, JOHNSON and SCHRODER, Judges.

*OPINION*

JOHNSON, Judge.

Irvin C. Rowe [1] has appealed from a judgment and sentence following a jury trial in the Calloway Circuit Court where he was convicted of assault in the second degree,[2] operating a motor vehicle under

---

1. Rowe was referred to during the trial by his middle name "Chad".

2. Kentucky Revised Statutes (KRS) 508.020.

the influence,[3] and carrying a concealed deadly weapon.[4] Rowe was sentenced to prison for seven years.[5] Having concluded that the trial court committed reversible error by refusing to instruct the jury on the offense of assault in the fourth degree, we reverse and remand for a new trial.

Rowe raises four issues in his appeal: (1) whether the trial court erred by refusing to instruct the jury on the lesser-included offense of assault in the fourth degree;[6] (2) whether the trial court erred by allowing the Commonwealth to cross-examine Rowe about his previous violation and misdemeanor convictions; (3) whether the trial court erred in denying Rowe's motion for a mistrial when the Commonwealth's Attorney asked Rowe if his companion on the night of the altercation was a convicted felon; and (4) whether the trial court erred by allowing the Commonwealth to introduce certain hearsay evidence.

At Rowe's trial on June 24, 1999, the evidence showed that on May 9, 1998, at the courthouse square in Murray, Kentucky, Rowe struck Jason Henson in the

mouth with his forearm and/or elbow.[7] This blow to Henson's mouth caused four of his lower, front teeth to be knocked back at approximately a 45–degree angle and the teeth had to be reset by using an arch bar. The extent of Henson's injury is at the center of this appeal.

Although both sides strongly contest the events that led up to the altercation between Rowe and Henson, for purposes of this Opinion it is not necessary to rehash the entire trial.[8] While Rowe did not deny hitting Henson, he claimed he was acting in self-defense. If the jury did not accept Rowe's defense of self-protection, the evidence presented at trial was sufficient to convict Rowe of either assault in the first degree or assault in the fourth degree. We must determine whether as a matter of law the Commonwealth proved that the injury Henson suffered as a result of the blow by Rowe constituted "serious physical injury."[9] If so, then Rowe was not entitled to a jury instruction for assault in the fourth degree.

■ A defendant is not entitled to an instruction on a lesser-included offense un-

---

3. KRS 189A.010(1)(b) (Rowe has not appealed this conviction).

4. KRS 527.020 (Rowe has not appealed this conviction).

5. Rowe was also fined $900.00: $400.00 for the conviction for DUI and $500.00 for the conviction for carrying a concealed deadly weapon. His 30–day sentence for the DUI conviction ran concurrently with his seven-year sentence.

6. KRS 508.030.

7. After Rowe struck Henson, he left the scene and he was arrested shortly thereafter for driving under the influence. While searching Rowe's car, the officer located a concealed 357 Magnum handgun wrapped in a shirt under the driver's seat. The weapon had not been used during the altercation with Henson.

8. On the date of the altercation, Rowe was 24 years old and Henson was 18 years old. Both men claimed to be "hanging out" in downtown Murray with separate groups of friends. Rowe and Henson did not know each other. Rowe admitted that he had drunk some alcohol, but he denied being intoxicated. Henson denied drinking any alcohol, but Rowe claimed that Henson hit him first and that when Henson hit him the beer in Henson's cup spilled on Rowe.

9. " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ[.]" KRS 500.080(15).

less the evidence is " 'such as to create a reasonable doubt as to whether the defendant is guilty of the higher or lower degree.' " [10] Here, the trial court refused to give Rowe an instruction on assault in the fourth degree and instructed the jury only on assault in the second degree.

KRS 508.020 sets out the following elements for assault in the second degree: [11]

(a) He intentionally causes serious physical injury to another person; or

(b) He intentionally causes physical injury to another person by means of a deadly weapon or dangerous instrument; or

(c) He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.

KRS 508.030 sets out the following elements for assault in the fourth degree: [12]

(a) He intentionally or wantonly causes physical injury [13] to another person; or

(b) With recklessness he causes physical injury to another person by means of a deadly weapon or a dangerous instrument. [14]

Henson testified that his chin was broken, and that in order for his teeth to be reset properly it was necessary for his mouth to be wired and for him to wear an arch bar for six weeks. Henson also testified that his injury required stitches; that he could not eat solid foods for some time; and that he experienced severe pain. Dr. Christopher Lee Poore, who was the emergency room physician at the Calloway County Hospital where Henson was taken after being injured, was the only doctor who testified at the trial. Dr. Poore testified that he saw Henson only briefly at the emergency room, and he diagnosed Henson's injury to be an evulsion or displacement of four lower, front teeth at a 45–degree angle. Dr. Poore said he had ordered a mandibular x-ray to determine if Henson had a fracture, but that before the x-ray could be taken, Henson abruptly left the emergency room. Dr. Poore testified that Henson was given some pain medication because he "was in a good deal of discomfort." Dr. Poore also testified that he saw no lacerations and that Henson did not have an injury that would create a substantial risk of death. Neither party asked Dr. Poore if Henson's injury caused a "prolonged inpairment of health," nor a "prolonged loss or impairment of the function of any bodily organ[.]" [15]

While Dr. Poore was treating Henson, Henson's family apparently decided it would be in his best interest to immediately go to Lourdes Hospital in Paducah, Kentucky, for different treatment. [16] Henson was treated at Lourdes Hospital by

10. *Jones v. Commonwealth*, Ky.App., 737 S.W.2d 466, 468 (1987) (citing *Tipton v. Commonwealth*, Ky., 640 S.W.2d 818, 820 (1982); *Luttrell v. Commonwealth*, Ky., 554 S.W.2d 75, 78 (1977)).

11. Assault in the second degree is a Class C felony.

12. Assault in the fourth degree is a Class A misdemeanor.

13. " 'Physical injury' means substantial pain or any impairment of physical condition[.]" KRS 500.080(13).

14. KRS 508.020(b) and (c) and KRS 508.030(b) are not applicable herein since a deadly weapon was not involved in the incident.

15. *See* n. 9, *supra.*

16. This additional treatment was not based on Dr. Poore's recommendation. According to Dr. Poore, he had spoken with a local specialist who thought he could reset Henson's teeth the following morning.

Dr. Ben B. Henry. While Dr. Henry did not testify at trial, some of Henson's medical records were introduced as evidence.[17] In the section of Dr. Henry's evaluation entitled "PROGNOSIS," he wrote:

> I feel the prognosis is extremely good for the teeth involved and the healing of the fracture in proper position since they had good blood supply and we were able to get a very good reduction of the fracture in proper position. Of course there is always the possibility of one or more of these teeth becoming nonvital and requiring root canal therapy or removal. Also, there is a chance of infection or nonunion of the mandibular alveolar segmental fracture. The patient may well have some numbness of the lip and anterior teeth area for sometime, but barring complications the sensation usually returns to normal or near normal given adequate time.

Generally, the Commonwealth argued at trial that no reasonable person could conclude that Henson's injury had not caused a "prolonged impairment of health"; and as matter of law, that Henson suffered a "[s]erious physical injury". The trial court agreed and, in essence, ruled that the only reasonable finding a jury could make as to the extent of Henson's injury was that his injury was a "[s]erious physical injury".

Accordingly, Rowe was denied an instruction for assault in the fourth degree.

In *Souder v. Commonwealth*,[18] the Supreme Court of Kentucky reversed a conviction for assault in the first degree because the Commonwealth failed to prove that the victim's injuries met the definition of "[s]erious physical injury" as required by the statute. Souder had been accused of sexually and physically abusing his girlfriend's two-and-one-half-year-old daughter. The evidence at trial showed that the child had "bruising and tearing in both the vaginal and anal areas[;]" "burns in and about her mouth" which may have been caused by "a cigarette, or a cigarette lighter[;]" "multiple areas of substantial bruising about her body[;]" and "a badly swollen arm." The Supreme Court stated that "[a]ll of the physical injuries proved to be relatively minor, and were successfully treated by the emergency room[s] ... at the various hospitals[,]" and "[n]one has required subsequent treatment, and there is no indication of any permanent physical injury." While the Supreme Court recognized the "hideous nature" of such acts, it held that these injuries did not meet the definition of "[s]erious physically injury" under KRS 500.080(15).[19]

---

17. Since the seriousness of Henson's injury is a critical element of this case, it is difficult to understand why neither side called Dr. Henry as a witness. *See Prince v. Commonwealth*, Ky.App., 576 S.W.2d 244, 246 (1978)("KRS 500.080(15) sets a fairly strict *level* of proof which must be met by sufficient evidence of injury, medical and/or non-medical, taken as a whole, before an instruction on first-degree assault may be given" [emphasis original] ).

18. Ky., 719 S.W.2d 730, 731–32 (1986).

19. Although we have been unable to find a case where the trial court was reversed for failing to give an instruction on assault in the fourth degree, there are several cases where the assault in the fourth degree instruction

was denied as a matter of law because the injury could only reasonably be found to be a serious physical injury. *Trent v. Commonwealth*, Ky.App., 606 S.W.2d 386, 387–88 (1980)(victim was shot and hospitalized requiring five surgeries and sustained muscle and nerve damage that prevented him from moving his fingers); *Jones v. Commonwealth*, Ky.App., 737.S.W.2d 466, 468 (1987)(victim lost his eye as a result of being hit in the face with a broken bottle); and *Johnson v. Commonwealth*, Ky.App., 926 S.W.2d 463, 465 (1996)(victim was a two-month-old baby who had been intentionally squeezed and dropped resulting in broken bones, head injuries, and fractured ribs).

■ In the case *sub judice,* according to the prognosis of treating physicians, Dr. Poore and Dr. Henry, Henson's injury was treated successfully and the injury did not create a substantial risk of death. We hold that the proof at trial failed to establish as a matter of law that Henson's injury could only reasonably be found to constitute a "[s]erious physical injury." Accordingly, the question of whether Henson's injury created a "prolonged impairment of health" was a proper question for the jury to determine; and the trial court erred by not instructing the jury on both assault in the second degree and assault in the fourth degree. Therefore, we must reverse Rowe's conviction for assault in the second degree and remand this matter for a new trial.

In his appeal, Rowe has also raised three evidentiary issues. Since all three issues may arise at a subsequent trial and since two of the trial court's rulings constitute clear error, we will address these issues. We will first address Rowe's claim that the trial court erred by allowing the Commonwealth to cross-examine him during surrebuttal by asking him about his previous violation and misdemeanor convictions. Rowe's counsel objected to this line of questioning as being irrelevant and prejudicial and moved for a mistrial.

The issue of Rowe's prior violation and misdemeanor convictions arose during the rebuttal phase of the trial. Rowe had claimed during his defense testimony that he had not been the aggressor in his altercation with Henson; the Commonwealth attempted to refute this testimony. The Commonwealth called D.J. Minter, who was 16 years old at the time of the incident, as a rebuttal witness. Minter recounted his encounter with Rowe at the Murray court square earlier on the night

of May 9, 1998. Minter claimed that Rowe pushed one of his friends and used obscene language towards his friend.[20] Minter also claimed Rowe yelled at him and hit him in the ear.

In an attempt to respond to these allegations, Rowe was called back to testify as part of the surrebuttal phase of his trial. The following colloquy took place:

Defense Counsel: You heard this gentleman just tell these ladies and gentlemen of the jury some terrible words that you allegedly said to a guy. . . .

Rowe: I heard what he said I said, and it's sick to even joke about; and I wouldn't say that.

Defense Counsel: Do you use that type of language?

Rowe: Sometimes I might cuss a little bit on the job or something along with the other guys.

Defense Counsel: But, the type of language he was referring to would you have ever said something like that?

Rowe: No, I would not.

Defense Counsel: Did you say that that night?

Rowe: No, I didn't.

Defense Counsel: Does that allegation offend your sensibilities?

Rowe: Yes, it does. It's an act of queers.

The Commonwealth's Attorney then cross-examined Rowe and asked him if would use vulgar language in a public place such as a restaurant. When Rowe said he would not "cuss" in a restaurant, the Commonwealth's Attorney proceeded to hand him a certified copy of a criminal complaint that had been filed in 1994 in the Marshall District Court and asked him to look at it. Rowe's counsel objected and

---

20. Minter alleged that while he and his friend were walking away Rowe yelled at his friend

"[b]end over because I'm going to fuck you in the ass."

argued that the Commonwealth was "trying to use the back door to get it in." The trial judge overruled the objection and responded, "It's impeachment ... it's clearly legit."

The trial court then allowed the Commonwealth to question Rowe concerning the criminal complaint which had charged him with harassment [21] and disorderly conduct.[22] The trial court over the defense's continuing objections allowed the Commonwealth's Attorney to compel Rowe to read from the criminal complaint.[23] The Commonwealth's Attorney then asked Rowe numerous questions concerning the details of the restaurant incident.

Following a bench conference to address the defense's continuing objections, the trial court allowed the Commonwealth's Attorney to continue with this line of questioning. The Commonwealth's Attorney then instructed Rowe to read from a certified copy of a criminal complaint dated May 20, 1996, which charged him with harassment and terroristic threatening.[24]

In its brief, the Commonwealth fails to cite any rule of evidence which allows the admission of this testimony, but argues:

Appellant asserts that this was done as part of a scheme to impeach appellant. There was no scheme here. This was surrebuttal. The Commonwealth had already fully cross-examined appellant during the case for the defense and had not explored this line of questioning.

It is though correct that the evidence was introduced to impeach appellant. But only after appellant denied his conduct that evening and asserted that he would not engage in any such conduct which he otherwise found so offensive that evening. The trial court and counsel were all aware that he had then opened the door and it was not otherwise error for the prosecution to follow that line of inquiry as the court candidly noted to counsel that all appellant needed to do was answer yes.

In determining whether evidence of Rowe's prior violation and misdemeanor convictions was admissible, we must consider KRE [25] 404, which provides in pertinent part:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in

21. KRS 525.070 (Harassment is a violation).

22. KRS 525.060 (Disorderly conduct is a Class B misdemeanor).

23. The affiant in the criminal complaint stated:

VIOLATED HARASSMENT AND DISORDERLY CONDUCT. THE AFFIANT IS THE MANAGER/OWNER OF KEN'S KITCHEN LOCATED IN MARSHALL COUNTY, KY. ON SAID DATE THE DEFENDANT AND SOME FRIENDS CAME TO EAT. THEY KEPT TURNING THE JUKE BOX UP AFTER AFFIANT TOLD THEM TO STOP, THEY START[ED] THROWING FOOD AND USING ABUSIVE LANGUAGE. THEY WERE ASKED TO LEAVE BUT WOULD NOT UNTIL THE SHERIFF WAS CALLED.

24. KRS 508.080 (Terroristic threatening is a Class A misdemeanor). The affiant in the criminal complaint stated:

WITH INTENT TO HARASS, ANNOY AND ALARM AFFIANT'S 15 YEAR OLD DAUGHTER, ADDRESSED ABUSIVE LANGUAGE, THREATENED TO GET AFFIANT'S 15 YEAR OLD DAUGHTER. DEFENDANT STATED TO MINOR CHILD HE WOULD GET HER EVENTUALLY AND HAVE SEX WITH HER. DEFENDANT ALSO THREATENED AFFIANT BY STATING DEFENDANT WOULD SLAP AFFIANT. DEFENDANT ENGAGED IN A COURSE OF CONDUCT IN WHICH ALARMED AFFIANT'S MINOR CHILD.

25. Kentucky Rules of Evidence.

conformity therewith on a particular occasion, except:

(1) Character of accused. Evidence of a pertinent trait of character or of general moral character offered by an accused, or by the prosecution to rebut the same[.]

. . . .

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

In commentary on this rule, Professor Robert G. Lawson has stated:

*Is the other crimes evidence relevant for some purpose other than to prove criminal disposition of the accused?* Because evidence of other crimes is inadmissible to prove the criminal propensity or predisposition of the accused, determinations of admissibility depend first and foremost upon finding that such evidence has relevancy to the dispute other than to show propensity or predisposition ... [emphasis original].

One such rule is that evidence of other crimes is not relevant for a proper purpose unless the fact it is offered to prove is truly in dispute.[26]

Clearly, evidence of Rowe's prior use of obscene language does not fit under any of the commonly accepted exceptions to KRE 404(a). Furthermore, the evidence clearly was not offered under KRE 404(b)(1) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Presumably, the Commonwealth offered the evidence to show that Rowe lied when he testified that he did not use obscene language as testified to by Minter.

The trial court stated that the evidence was admissible for purposes of impeachment. KRE 609, "[i]mpeachment by evidence of conviction of crime", states in pertinent part:

(a) General rule. For the purpose of reflecting upon the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record if denied by the witness, but only if the crime was punishable by death or imprisonment for one (1) year or more under the law under which the witness was convicted.

While Rowe's claim that he would not use obscene or abusive language in a public place such as a restaurant was inconsistent with his past conduct which resulted in at least two convictions, KRE 609 prohibits the introduction of a past conviction unless it meets the necessary conditions. Under KRE 609, a conviction for a violation or a misdemeanor is inadmissible.

■ The Commonwealth argued and the trial court agreed that Rowe's direct examination on surrebuttal and his subsequent denial on cross-examination that he had ever used obscene or abusive language in a public place "opened the door" to allow the Commonwealth to introduce his previous

**26.** Lawson, *The Kentucky Evidence Law*    *Handbook* § 2.25 (3d ed., 1993).

convictions. However, Professor Lawson has stated otherwise:

> The problem of impeachment by contradiction on collateral facts usually results from cross-examination that runs far afield. It can arise, however, as a consequence of direct examination that extends beyond the reach of disputed issues. *Keene v. Commonwealth* [, 307 Ky. 308, 210 S.W.2d 926 (1948) ] is illustrative. In a prosecution for rape, the defendant testified in his own behalf to deny that he was the rapist. His lawyer asked the following question: "Did you on that night or any other time either assault, beat or rape Dorothy Scott or any other person at any time or place?" He answered no to this question; the prosecution inquired on cross-examination about an assault by the accused upon a second woman and upon getting a denial produced testimony from the other woman about the uncharged assault.
>
> The question raised by the facts of *Keene* is whether one who opens the door to a collateral issue can take advantage of the prohibition against contradiction on collateral matters. The ruling in *Keene* suggests that it does not matter who raises the collateral issue. In finding error below, the High Court (the *High Court is the predecessor to the existing Supreme Court*) said simply that "a witness may not be impeached on matters that are irrelevant or collateral to the issue being tried" [footnote omitted].[27]

The factual situation in *Keene* closely resembles the scenario in the present case. In both cases, the door was opened by questions that were overly broad and were not essential to the case. While it may have been of interest to know if Rowe had on other occasions used vulgar language in public, his use of that type of language on previous occasions was collateral to the issue of whether he assaulted Henson. Accordingly, we hold that evidence of Rowe's prior convictions for a violation and a misdemeanor should not have been admitted.

■ Rowe also claims the trial court erred in allowing the Commonwealth to introduce evidence of the criminal record of his companion. During cross-examination, the Commonwealth's Attorney asked Rowe:

> Now, you said you had with you a fellow by the name of William David Hall. Is that right? That goes by Marvin. Is that the Marvin William David Hall we all know over in Marshall County? Been in prison a number of times? He is a convicted felon, isn't he?

The Commonwealth then mentioned a second time that Rowe's companion was "a convicted felon." Rowe's counsel objected and moved the trial court for a mistrial, which was denied. Rowe's counsel also moved the trial court to admonish the jury that the Commonwealth's Attorney's questions and comments were irrelevant and not to be considered. The trial judge also denied that motion and merely told the Commonwealth's Attorney, "I think you've gone far enough with that line of questioning."

These questions by the Commonwealth's Attorney concerning Hall's criminal history were clearly improper and prejudicial to Rowe. In its brief, the Commonwealth argues that, "[a]ny negative inference to be drawn from Mr. Hall's prior record then could have only benefitted appellant." This argument is unsupported and without merit.

27. Lawson, *The Kentucky Evidence Law* *Handbook,* § 4.10 (3d ed., 1993).

In *Terry v. Commonwealth*,[28] the defendant presented an alibi witness, who on cross-examination admitted that she knew three men who were in jail at that time. In his closing argument, the prosecutor stated that he was familiar with the three men he had asked the alibi witnesses about and that they were "rotten to the core." The Court held that the defendant "was entitled to have his case tried without the Commonwealth's unauthorized assault upon one of his alibi witnesses." At a new trial of the case *sub judice*, the Commonwealth should refrain from such attacks.

■ Lastly, Rowe claims the trial court erred by admitting into evidence hearsay testimony concerning the incident. Rowe argues:

> At trial, Dr. Poore testified that according to his notes made at the time [sic]. Mr. Henson was examined, Mr. Henson told him that "he was just standing around—someone he didn't know came up and hit him in the face." Dr. Poore also testified that the nurse's notes said Mr. Henson told her he was hit by an elbow. This hearsay testimony was improperly admitted into evidence.

The applicable hearsay exception is KRE 803(4), which states:

> Statements made for the purpose of medical treatment or diagnosis and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof *insofar as reasonably pertinent to treatment or diagnosis* [emphasis added].

Rowe argues that this hearsay testimony should not have been admitted because it was not pertinent to Henson's treatment and that it was prejudicial because it negated his defense of self-defense. To the extent the statements made by Henson to Dr. Poore were made for the purpose of describing how his injury occurred, we hold this evidence to be admissible pursuant to the widely-accepted exception to the hearsay rule pertaining to statements made for the purpose of medical treatment or diagnosis.[29] The fact that the victim was hit unexpectedly and by a forearm and/or an elbow may have been of benefit to the physician in the treatment or diagnosis of the injury.

The judgment of the Calloway Circuit Court convicting Rowe of assault in the second degree is reversed and this matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

28. Ky., 471 S.W.2d 730, 732–33 (1971).

29. *Belt v. Commonwealth*, Ky.App., 2 S.W.3d 790, 792–93 (1999).