**COMMONWEALTH of Kentucky,
Appellant,**

v.

**Angella PRATER, Appellee.**

No. 2009–SC–000352–DG.

Supreme Court of Kentucky.

Oct. 21, 2010.

---

**35.** *Wilson,* 37 S.W.3d at 749. (Emphasis added).

Jack Conway, Attorney General of Kentucky, Heather Michelle Fryman, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellant.

Barbara Anderson, F.J. Anderson, Lexington, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

The Court of Appeals vacated a judgment convicting Angella Prater of reckless homicide [1] for her son's death in a vehicular collision, concluding that the trial court erred in allowing extrinsic evidence to impeach Prater on a collateral matter. Specifically, the trial court had allowed the Commonwealth to introduce extrinsic evidence to disprove Prater's assertion in direct testimony that she had undergone nasal surgery a few days before the collision and, as a result of the nasal surgery,

---

1. Kentucky Revised Statutes (KRS) 507.050("(1) A person is guilty of reckless homicide when, with recklessness he causes the death of another person. (2) Reckless homicide is a Class D felony.").

had received prescriptions for two painkillers. Because Kentucky precedent recognizes that a trial court's decision to admit evidence despite claims of improper collateral impeachment is subject to review for abuse of discretion and because we discern no abuse of discretion in the trial court's admitting the evidence under the unique facts and circumstances presented in this case, we reverse the Court of Appeals and reinstate the judgment of the trial court.

## I.  FACTS.

Prater was the driver in a single-vehicle collision in which her truck left the road and hit a tree. Eyewitness testimony indicated that Prater may have been traveling too fast or inattentively. But other evidence suggested that a tire came off the truck causing it to leave the road. Prater's two-year-old son, who was a passenger in the truck at the time of the collision, died as a result of blunt-impact trauma to the head.

Soon after the accident, the Kentucky State Police laboratory tested Prater's blood for drugs and alcohol. The test results were positive for prescription painkillers Tramadol and Methadone at or below therapeutic levels. The test results were also positive for Zoloft, an antidepressant for which the laboratory did not have a standard for therapeutic levels at that time. Apparently, no alcohol or other drugs were found in her blood; and a laboratory official later testified that she could not determine whether Prater was impaired as a result of the prescription drugs.

Prater was indicted and tried on a charge of reckless homicide, a Class D felony. At trial, she testified to having taken the three prescription drugs the day before the accident. She further stated that a counselor had prescribed the Zoloft and that a doctor prescribed the painkillers following nasal surgery, which she alleged she underwent "three or four" days before the accident. Upon cross-examination, Prater admitted that she was uncertain about when the nasal surgery occurred. She allowed on cross-examination that perhaps the nasal surgery could have occurred more than the three or four days before the accident. The Commonwealth's attorney then suggested that perhaps Prater could have easily obtained her medical records in advance of trial to facilitate quick verification of the precise date of the nasal surgery.

At a bench conference that followed, the Commonwealth asked the trial court for an order to obtain Prater's medical records from the nasal surgery. Prater's counsel objected, based on relevancy; questioned what the Commonwealth expected to find in the records; and informed the court that the nasal surgery actually occurred after the accident. The trial court overruled the objection and issued an order permitting the Commonwealth to obtain Prater's medical records from the doctor whom Prater identified as having performed her nasal surgery and having prescribed the two painkillers.

After the jury returned from a break, the medical records custodian and nurse of the physician who performed the nasal surgery testified. The custodian's review of the records revealed that the nasal surgery occurred over two years after the accident and that the physician had prescribed one painkiller, Methadone; but he had not prescribed the other painkiller.

Prater later resumed the witness stand and explained that she had misremembered the nasal surgery as occurring a few days before the accident. She testified that she had had a number of medical problems, including a head injury from the accident, and had become confused. She testified then that she had suffered an

ankle injury before the accident for which she took painkillers. Over the Commonwealth's objection to lack of authentication, the trial court permitted Prater to present evidence of records indicating that she had been seen by a doctor for an ankle injury several weeks before the accident and that she had filled prescriptions for the two painkillers at a particular pharmacy before the accident.

Upon further cross-examination, the Commonwealth attempted to cast doubt on Prater's claims that she was taking two prescription painkillers for the ankle injury by eliciting Prater's admission that there was no radiology report for the ankle injury. This suggested, of course, that no fracture had occurred or was even suspected. Prater also admitted that she had no direct record that a doctor had prescribed any painkillers for the ankle injury. She went on to state that she could not actually recall the medical condition for which she began taking the painkillers, and she was hesitant or unsure about identifying the name of the doctor who had prescribed them. And we are not aware of any request by Prater for further intervention by the trial court, such as a request for a continuance, in order to gather and present other medical records or other evidence concerning her treatment for her ankle injury or other medical conditions.[2]

The jury found Prater guilty of the reckless homicide charge and recommended the maximum sentence of five years' imprisonment. The trial court entered judgment in accordance with the jury's verdict and sentencing recommendation.

On appeal, the Court of Appeals vacated the trial court's judgment and remanded for further proceedings on the basis that the trial court had "erred to [Prater's] substantial prejudice in allowing the Commonwealth to introduce evidence that impeached her testimony that the pain medication in her system was the result of prescriptions connected to nasal surgery."

The Court of Appeals determined that the reason for Prater's admitted use of the prescription drugs in her system was irrelevant to determining her guilt or innocence on the reckless homicide charge and was, thus, a collateral issue. Noting that Prater's objection on relevancy grounds was closely related to the concept of collateral impeachment and, thus, determining the collateral impeachment issue adequately preserved for review, the Court of Appeals concluded that the trial court had erroneously allowed the Commonwealth to introduce evidence to impeach Prater on a collateral issue. *The Court of Appeals vacated the conviction.*[3]

2. Prater's brief points out that during the course of her cross-examination by the Commonwealth, she asked whether she was being tried for medical records or for driving recklessly. And she also points out that the trial court explained to her that she had testified on direct examination to undergoing nasal surgery shortly before the accident, that records indicated the nasal surgery occurred after the accident, and that was why she was being cross-examined about her medical records. We note that this explanation for the cross-examination did not occur at a bench conference but, apparently, within the hearing of the jury. Also, other objections were occasionally discussed by the trial court in the hearing of the jury. While our preference

would be for such discussion of objections and legal issues to be outside the hearing of the jury, Prater has not asserted any error from such discussions before the jury; and we see no indication of any palpable error (as defined by Kentucky Rules of Criminal Procedure (RCr) 10.26) occurring as a result.

3. We also note that the Court of Appeals rejected Prater's argument that she was entitled to a directed verdict based on insufficiency of the evidence and her argument that the trial court erred in not admonishing the jury that it could not consider her failure to secure the child in a safety seat to be reckless conduct. But Prater did not file a protective

## II. ANALYSIS.

### A. We Assume that the Issue of Collateral Impeachment is Adequately Preserved.

The Commonwealth contends that the Court of Appeals erred in determining that the issue of collateral impeachment was adequately preserved by Prater's objection on grounds of relevancy.[4] Although we agree with the Court of Appeals that the issue of collateral impeachment is closely related to the concept of relevancy, Prater's objection on relevancy grounds did not clearly invoke the prohibition against collateral impeachment, meaning that preservation of the collateral impeachment issue may be somewhat questionable.

Given the imprecise preservation of the issue, the issue should arguably only be reviewed under a palpable error standard under RCr 10.26. But even assuming that the issue is properly preserved, we do not believe the trial court abused its discretion in admitting the evidence; and so we believe that the Court of Appeals incorrectly

determined that Prater was entitled to relief.

We certainly agree that a more specific objection on collateral impeachment would have been more effective in bringing this issue to the trial court's attention;[5] but we will, nonetheless, accept for the sake of argument that the issue of collateral impeachment is adequately preserved in order to address this issue and provide guidance to the bench and bar.

### B. Court of Appeals Erred in Vacating Conviction for Collateral Impeachment.

■ This case forces us to apply the somewhat confusing rule against collateral impeachment. In fact, there is no particular rule in the Kentucky Rules of Evidence (KRE) clearly addressing impeachment on collateral facts, matters, or issues.[6] Yet, our case law continues to hold that impeachment on collateral matters by extrinsic evidence is not allowed.[7] Despite the

---

cross-appeal on these issues that the Court of Appeals did not resolve in her favor. So none of those issues are properly before us.

4. The Court of Appeals took note that Prater did not explicitly raise the issue of collateral impeachment when objecting to the admission of her medical records. Nonetheless, it concluded that the issue of collateral impeachment was adequately preserved by Prater's objection on relevancy. Its conclusion was based on Court of Appeals precedent that recognized that collateral impeachment issues are closely related to relevancy issues, quoting *Simmons v. Small*, 986 S.W.2d 452, 455 (Ky. App.1998): "A matter is considered collateral if the matter itself is not relevant in the litigation to establish a fact or consequence, *i.e.*, not relevant for a purpose other than mere contradiction of the in-court testimony of the witness." (quotation marks omitted).

Since the result in this case does not change whether the issue is preserved or not, this opinion should not be construed as a definitive holding that an objection based on relevancy will always suffice to preserve an appel-

late argument that evidence was inadmissible on collateral impeachment grounds.

5. As we recognized in *West v. Commonwealth*, 780 S.W.2d 600, 603 (Ky.1989), that stating objections with specificity may help prevent error by trial courts by directing their attention to issues that otherwise might not be fully considered until appeal.

6. *See* Robert G. Lawson, THE KENTUCKY EVIDENCE LAW HANDBOOK (4th ed.2003) § 4.05(3). ("Kentucky's Evidence Rules, like the Federal Rules, say nothing specific about impeachment on collateral facts.").

7. *See, e.g., Purcell v. Commonwealth*, 149 S.W.3d 382, 397–98 (Ky.2004) ("Although there is no provision in the Kentucky Rules of Evidence prohibiting impeachment on collateral facts, we have continued to recognize that prohibition as a valid principle of evidence."); *Woodard v. Commonwealth*, 219 S.W.3d 723, 730 (Ky.2007) ("this would be impeachment on a collateral matter, which is

clear prohibition from case authority against impeachment on collateral matters by extrinsic evidence, we still review the trial court's decision to admit evidence over objections of collateral impeachment under an abuse of discretion standard of review as we explain below.

Professor Lawson notes that rules concerning collateral impeachment "are easy to describe but very difficult to apply, because of the complexity involved in determining 'collateralness.' "[8] And because determinations of the collateralness are so fact-specific and generally not clear-cut, Kentucky precedent provides that a trial court's decision to admit impeachment evidence on a purportedly collateral matter is subject to an abuse of discretion standard: "decisions on collateralness fall within the discretion of the judge and are reviewed for abuse of that discretion [; and this is] no surprise since they depend so heavily on the specific facts of the case and require a careful exercise of sound judgment in the heat of courtroom battle."[9]

Applying the proper abuse of discretion standard of review, we disagree with the Court of Appeals' determination that Prater's conviction must be vacated. We hold that the trial court properly exercised its discretion to permit impeachment on this issue because Prater created the issue by offering on direct examination a misleading explanation of why she was taking the

painkillers. It is plausible to infer that she did so in an effort to present herself to the jury in a sympathetic light.

*1. Regardless of Whether Issue of Reason for Prater's Painkiller Use Was Collateral, Trial Court had Discretion to Allow Admission of Extrinsic Evidence to Disprove Prater's Assertion on Direct Examination Because She Injected this Issue into the Trial.*

■ Perhaps the most hotly disputed issue in this case is whether the reason for Prater's admitted ingestion of the two prescription painkillers is truly a collateral matter. And we note that whether Prater had taken the prescription painkillers as a result of a particular surgery or injury or for other reasons was not necessarily the linchpin of her guilt or innocence on the reckless homicide charge. For example, it is possible that one might be held liable for reckless homicide for fatal injuries resulting from driving impaired [10] from the side effects of properly prescribed and administered drugs—particularly where the defendant was warned of side effects such as drowsiness.[11] Nonetheless, the fact remains that Prater first injected into the trial the issue of her reason for taking the painkillers; and we must consider the effect of her injecting the issue into the trial.

---

allowed while the witness is still on the stand, although not by extrinsic evidence").

8. LAWSON at § 4.05(2).

9. *Id., citing, e.g., Wickware v. Commonwealth,* 444 S.W.2d 272, 275–76 (Ky.1969).

10. We note that the jury was not specifically asked to determine if Prater was impaired as a result of her use of prescription drugs and that it is possible that the jury found her behavior to have been reckless for other reasons.

11. *See Commonwealth v. Reynolds,* 67 Mass. App.Ct. 215, 852 N.E.2d 1124, 1126, 1130 (2006) (upholding conviction for "vehicular homicide by reckless or negligent operation while under the influence of narcotic drugs or depressants (felony vehicular homicide)" where evidence indicated that defendant was impaired *due to taking certain prescription* drugs (prescription painkiller and Valium) as prescribed by medical professionals where defendant had received written and oral warnings as to drugs' tendency to induce drowsiness and impair driving).

Even assuming that the reason for her taking the prescription painkillers was a collateral matter, Professor Lawson recognizes that an unsettled issue arises, namely: "May a party who first opens the door to a collateral issue take advantage of the prohibition against collateral facts impeachment?" [12] On the one hand, "[t]he damaging effects of issue proliferation do not depend upon who takes the initiative to introduce a collateral issue into the case." [13] On the other, "one must harbor at least some doubt as to whether a party should be permitted to raise a collateral matter and then use the law as a shield against full contradiction of that matter." [14]

And Professor Lawson notes a split among Kentucky cases before adoption of the Kentucky Rules of Evidence. He cites *Dixon v. Commonwealth*[15] as indicating that impeachment on collateral matters may be permitted when a party "opens the door" to a collateral issue through that party's testimony on direct examination.

He also cites *Keene v. Commonwealth*[16] as an opposing example where impeachment on a collateral matter was considered improper without any discussion of the fact that the collateral issue was first raised by the defendant upon direct examination.[17] Professor Lawson concludes that this split "may suggest that outcomes should depend upon specific facts and circumstances of a case and the exercise of sound discretion by the trial judge." [18]

█ In light of the concerns raised in Professor Lawson's discussion—desire to avoid issue proliferation versus potential use of collateral impeachment rules as a "license to lie" [19]—including an apparent split in authority, we conclude that the trial court has discretion to determine whether or not to permit impeachment on collateral issues when a party has opened the door to such issues by raising them in direct testimony. And we believe that our conclusion is supported by Kentucky prec-

12. Lawson at § 4.05(4).

13. *Id.*

14. *Id.*

15. 487 S.W.2d 928 (Ky.1972).

16. 307 Ky. 308, 210 S.W.2d 926 (1948), *overruled on other grounds by Colbert v. Commonwealth*, 306 S.W.2d 825, 828 (Ky.1957). *Colbert* itself has been overruled on grounds not germane to the case at hand.

17. We also note that Prater cites *Rowe v. Commonwealth*, 50 S.W.3d 216, 224 (Ky.App. 2001), in her brief for the proposition that regardless of who opened the door on a collateral issue, impeachment on a truly collateral issue is not permitted.

18. Lawson at § 4.05[4].

19. *See* Kevin McMunigal & Calvin William Sharpe, *Reforming Extrinsic Impeachment*, 33 Conn.L.Rev. 363, 379 (2001) (arguing for use

of weighing approach rather than bright line rule forbidding all impeachment by extrinsic evidence of collateral matters in Federal Rules because "in the context of impeachment, the predictability of bright line rules may not be entirely desirable. Ironically, it may have the negative consequence of encouraging perjury. If a witness and the lawyer calling the witness know, for example, that if the witness falsely denies a non-conviction act offered on truthfulness, the cross-examining lawyer is absolutely barred from disproving the witness' denial by extrinsic proof, the witness and lawyer calling him may be tempted to offer perjured testimony. In other words, they may view a ... bright line exclusion as a license to lie. By contrast, if the lawyer and witness are unsure whether the judge will or will not allow such extrinsic proof under a case-by-case approach, they have a greater incentive not to offer a lie because there is a greater chance the perjury will be exposed before the fact finder by extrinsic proof."). *See also* Frederick C. Moss, *The Sweeping Claims Exception and the Federal Rules of Evidence*, 1982 Duke L.J. 61 (1982).

edent.[20] To the extent that some Kentucky cases might appear to hold that a trial court invariably lacks discretion to permit impeachment on a collateral issue raised by a party on direct examination, such cases are hereby overruled.

We believe the trial court is in the best position to decide whether the facts and circumstances of that case present a scenario in which the evil of allowing a party to offer voluntarily what may be knowingly false testimony with impunity outweighs the evil of having to devote trial time to impeachment on collateral matters. And we now clearly hold that the trial court has discretion to permit or deny impeachment by extrinsic evidence on a collateral issue raised by a party on direct examination.

### 2. Trial Court Did Not Abuse its Discretion in Admitting the Evidence.

■ Under the unique facts of this case, we discern no abuse of discretion in the trial court's admission of Prater's medical records to impeach her assertion on direct examination that she took the prescription painkillers because they had been prescribed to her following nasal surgery shortly before the accident. Prater chose to create the issue of the reason behind her taking the painkillers to the jury and was allowed to present other records—despite concerns over lack of authentication—in her efforts to show other medical reasons for taking the prescription painkillers once the Commonwealth effectively cast doubt on her initial assertion. Because she opened the door to inquiry on why she was taking the prescription drugs, we believe that the trial court had latitude to allow the Commonwealth to attack the veracity of her assertion or to require that the matter drop on grounds of issue proliferation, jury confusion, or waste of time.

Here, Prater's assertion on direct examination that she took the drugs as prescribed following surgery might cast her in a more sympathetic light than, for example, leaving the jury to guess whether she

---

**20.** *See Dixon,* 487 S.W.2d at 930 (holding that in light of defendant's statement on direct examination that he had never been previously arrested on a morals charge, evidence of prior convictions of morals charges, if properly authenticated, could have been properly admitted in rebuttal); *Cox v. Commonwealth,* 290 Ky. 642, 162 S.W.2d 201, 201–02 (1942) (no reversible error from trial court permitting presentation of witness's testimony concerning specific prior bad act due to defendant "opening door" to issue by testifying on direct examination that he had never been charged with similar crimes in past, especially as trial court gave limiting admonition); *Dowell v. Bivins,* 586 S.W.2d 297, 299–300 (Ky.App.1979) (in trial of parents' civil lawsuit to recover for death of child hit by vehicle on public highway, defense was properly permitted to present testimony of other witnesses concerning prior occasions when child was seen playing unsupervised near same highway to rebut parents' testimony that child always played close to home under parental supervision and never played near highway); *Stallworth v. Commonwealth,* No.2000-SC-0821- MR, 2001–SC–0569–TG, 2002 WL 32083941, at *4 (Ky. Oct. 17, 2002) (finding no abuse of discretion in trial court's allowing Commonwealth to identify defendant's prior convictions as being for the same crime he was presently charged with (drug trafficking) in light of defendant "opening door" to this collateral issue by his statement on cross-examination that he had never sold drugs, despite KRE 609's limits on specifically identifying the nature of prior convictions). *See also Purcell,* 149 S.W.3d at 397–98 ("Although there is no provision in the Kentucky Rules of Evidence prohibiting impeachment on collateral facts, we have continued to recognize that prohibition as a valid principle of evidence," but noting that "Professor Lawson suggests that the issue is more properly decided by applying the KRE 403 balancing test, *i.e.,* weighing the probative value of the impeachment against the prejudicial effect of that evidence and its possible confusion of issues" before ultimately also stating that the prejudicial effect of prior bad acts will almost always outweigh their probative value.) (citations omitted).

was taking the drugs recreationally or had obtained the drugs in violation of the law.[21] Because Prater herself raised the reason for her prescription painkiller use to the jury in a way likely to increase its sympathy toward her, denying the Commonwealth the opportunity to investigate and rebut the truth of her assertion could obviously impede the interests of justice and search for the truth. So the trial court did not abuse its discretion in permitting the Commonwealth to impeach her on a matter that she injected into trial with the likely, if not intended, effect of appealing to the jury's sympathy.

Because Prater chose to raise the issue of why she had taken the prescription painkillers to the jury as part of her defense and because flatly foreclosing the Commonwealth from any opportunity to impeach this assertion through extrinsic evidence could have had the effect of condoning false testimony without consequences, we find no abuse of discretion in the trial court's allowing impeachment by extrinsic evidence under the facts here.

### III. CONCLUSION.

For the foregoing reasons, the judgment of the Court of Appeals is reversed; and the judgment of the trial court is reinstated.

All sitting. All concur.

---

**21.** To our knowledge, Prater was not charged with illegal possession of the prescription drugs.