Commonwealth *vs.* Thomas Flaherty.

No. 03-P-1269.

Essex. June 2, 2004. - September 7, 2004.

Present: Lenk, Kantrowitz, & Cohen, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Police report, Intoxication, Medical record, Exculpatory. *Practice, Criminal,* Prior conviction. *Intoxication.*

A prior out-of-State offense constituted a conviction that could serve as a predicate offense under G. L. c. 90, § 24(1)(*a*)(1), for purposes of determining the defendant's guilt as a fourth time offender of operating a motor vehicle while under the influence of alcohol. [777-779]

The prosecutor's improper use at a criminal trial of a police report written by a nontestifying booking officer did not constitute a substantial risk of a miscarriage of justice where such use was cumulative of another officer's testimony and where the defense had also improperly used the report to its advantage. [779-781]

At the trial of an indictment charging the defendant with operating a motor vehicle under the influence in violation of G. L. c. 90, § 24, the exclusion from evidence of the defendant's medical records was within the judge's discretion, given the lapse of time from the defendant's arrest to his hospitalization and the judge's concern that the records could be misleading. [781-782]

INDICTMENT found and returned in the Superior Court Department on May 22, 2002.

The case was tried before *Diane M. Kottmyer,* J.

*James L. Sultan (Amy S. Albert* with him) for the defendant.

*Gregory I. Massing,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. A Superior Court jury convicted the defendant of operating a motor vehicle while under the influence of al-

cohol, fourth offense, G. L. c. 90, § 24.[1] The main issue on appeal is the propriety of using a New Hampshire "conviction" as one of the prior offenses. We hold that it was proper.

*Facts.* On November 24, 2001, at 1:20 A.M., Newburyport police Officer Kevin Martin observed the defendant, Thomas Flaherty, driving sixty miles per hour in a thirty-five mile per hour zone and swerving erratically across the road's center lane line. Martin followed the defendant's vehicle for approximately one-quarter mile before activating his police cruiser's lights and siren. Despite the flashing lights and siren, the defendant did not stop the car he was driving until he reached his home, approximately three-quarters mile from the exit ramp where Martin first observed the defendant's speeding vehicle. Martin then administered field sobriety tests to the defendant, which he failed.

After booking, the defendant was placed in a holding cell, whereupon he complained of chest pains, necessitating a trip to the hospital, where he was treated and released.

He appeals, claiming that (1) a prior New Hampshire offense resulted in neither a conviction nor a court assignment for treatment, and thus cannot serve as a predicate offense under G. L. c. 90, § 24(1)(*a*)(1); (2) the prosecutor erroneously used a police report written by a nontestifying booking officer; and (3) the hospital records from the night of his arrest should have been admitted in evidence, as they were exculpatory in that they did not contain any reference to his being intoxicated.

1. *The out-of-State charge.* Under Massachusetts law, the defendant is guilty as a fourth time offender "[i]f the defendant has been previously convicted or assigned to an alcohol or controlled substance education, treatment, or rehabilitation program by a court of the commonwealth or any other jurisdiction because of a like offense three times preceding the date of the commission of the offense for which he has been convicted . . . ." G. L. c. 90, § 24(1)(*a*)(1), as appearing in St. 1999, c. 127, § 108, 109.

The prior charge at issue occurred on December 12, 1998, in

[1]He was found not guilty of refusing to submit to a police officer, G. L. c. 90, § 25. After the operating a motor vehicle while under the influence of alcohol conviction, he waived a jury trial, and was found guilty of being a fourth time offender.

Rochester, New Hampshire.[2] On January 4, 1999, the defendant pleaded guilty to driving under the influence of liquor, in violation of N.H. Rev. Stat. Ann. § 265:82.[3] Pursuant to N.H. Rev. Stat. Ann. § 265:82-b, I(a), "[a]ny person who is *convicted* of any offense under . . . [N.H. Rev. Stat. Ann. §] 265:82 shall be: (1) Guilty of a violation . . . ." (emphasis added).

Further, under New Hampshire practice, "[u]pon conviction of a violation of [N.H. Rev. Stat. Ann. §] 265:79, 82 or 82-a, the court shall report to the department [of motor vehicles] and shall immediately revoke the license or driving privilege of the person so convicted . . . ." N.H. Rev. Stat. Ann. § 263:65. In order to have the license reinstated, one must furnish "proof of successful completion of an impaired driver intervention program" to the motor vehicle registry. N.H. Rev. Stat. Ann. § 263:65-a(I).[4]

The defendant claims that neither prong of our statute is met; that is, (1) the defendant here was not "previously convicted," but rather was merely "guilty of a violation" pursuant to N.H. Rev. Stat. Ann. § 265:82-b; and (2) it is the New Hampshire registry, not the court, which requires the completion of an alcohol program.

It appears that under New Hampshire law, the defendant was convicted. Although the preference is to treat the conviction as a violation for sentencing purposes, such treatment does not detract from the fact that the defendant was previously convicted. As indicated, the law reads "[a]ny person who is convicted of any offense under . . . [N.H. Rev. Stat. Ann §]

---

[2]Two prior Massachusetts offenses, which occurred on May 14, 1992, and October 1, 1994, are not at issue.

[3]N.H. Rev. Stat. Ann. § 265:82 provides, in part, "No person shall drive or attempt to drive a vehicle upon any way: (a) While such person is under the influence of intoxicating liquor or any controlled drug or any combination of intoxicating liquor and controlled drugs; or (b) While such person has an alcohol concentration of 0.08 or more or in the case of a person under the age of 21, 0.02 or more."

[4]N.H. Rev. Stat. Ann. § 263:65-a(I) provides, in part, "The director shall not restore the license or driving privilege of any person whose license or privilege has been revoked or suspended pursuant to [N.H. Rev. Stat. Ann. §] 265:82 or 265:82-a until such person has furnished proof of successful completion of an impaired driver intervention program . . . ."

265:82 shall be: (1) Guilty of a violation . . . ." N.H. Rev. Stat. Ann. § 265:82-b, I(a).

Our view is buttressed by the language in *State* v. *Parmenter*, 149 N.H. 40, 46 (2002), where New Hampshire's Supreme Court indicated that "[t]he plain language of these statutes makes clear that if a person is *convicted* of [driving while under the influence of alcohol], first offense, a court will impose a fine and license suspension within the statutory limits" (emphasis added). Lastly, we note that the plea tender sheet indicates that "a conviction will be entered against me."

We conclude, therefore, that the New Hampshire offense was a conviction for G. L. c. 90, § 24, purposes.[5,6]

2. *The police report.* On direct examination, Martin testified, in part, that the defendant was antagonistic and disruptive, and did not indicate that he had any medical problems. In an apparent attempt to impeach the witness, defense counsel repeatedly made reference to the alcohol influence report of a second, non-testifying officer, Officer Chelmo, which indicated that the defendant was "cooperative and polite" during the booking process and had previously suffered a broken foot. Further, defense counsel sought to have Martin admit that in the section of the report describing the defendant's actions, a box marked "staggering" had not been checked.[7]

On redirect examination, presumably in an attempt to

---

[5]Having so concluded, we need not reach the issue of whether the requirement that *the court assign* a defendant to a treatment program is met in New Hampshire, wherein the onus is upon the individual and the registry rather than the court. "The Director [of the registry of motor vehicles] shall not restore the license . . . until such person has furnished proof of successful completion of an impaired driver intervention program . . . ." N.H. Rev. Stat. Ann. § 263:65-a.

[6]Practically speaking, even if we were to agree with the defendant, the result would be a reduction of the verdict to operating a motor vehicle while under the influence of alcohol, third offense, see *Commonwealth* v. *Hernandez*, 60 Mass. App. Ct. 416, 418-419 (2004), and a remand for resentencing, which would likely be of little assistance to the defendant given the comments of the judge at sentencing. "[Given the defendant's background,] I don't feel that the court has any option but to impose . . . a sentence which is in excess of the mandatory minimum sentence here."

[7]During recross-examination, Martin testified that the "staggering" box was not checked because the defendant was seated during the entire booking process.

rehabilitate his witness, the prosecutor questioned Martin concerning Chelmo's written observations regarding the defendant's symptoms of intoxication, clothing, and speech.

The use of the report by both parties was error. On cross-examination, it did not serve as fodder for impeachment purposes. That the defendant was polite with booking officer Chelmo does not impeach Martin's testimony that the defendant was not polite with him earlier that night. Perhaps feeling he had to fight fire with fire, the prosecutor then engaged in further inappropriate use of the report, pointing out sections which supported Martin's testimony.

On appeal, the Commonwealth contends that its use of the report was permissible under the doctrine of verbal completeness. "The purpose of the doctrine is to prevent one party from presenting a fragmented and misleading version of events by requiring the admission of other relevant portions of the same statement or writing which serve to clarify the context of the admitted portion." *Commonwealth* v. *Eugene*, 438 Mass. 343, 351 (2003) (citations and internal quotations omitted). "The portion of the statement sought to be introduced must 'qualify or explain the segment' previously introduced." *Commonwealth* v. *Richardson*, 59 Mass. App. Ct. 94, 99 (2003), quoting from *Commonwealth* v. *Leftwich*, 430 Mass. 865, 872 (2000).

Here, clearly the statements the prosecutor sought to introduce did not clarify, qualify, or explain what defense counsel had earlier elicited. Indeed, if we were to accept the Commonwealth's liberal interpretation of the rule, once a party used one aspect of a police report or grand jury minutes, then theoretically the entire report would be subject to admission in evidence. This is not the state of the law.

As there was no objection, we assess whether its use constituted a substantial risk of a miscarriage of justice in the context in which it occurred. *Commonwealth* v. *Kilburn*, 438 Mass. 356, 360-361 (2003). It did not.

The prosecutor's use of portions of the report was cumulative of Martin's testimony regarding the defendant's demeanor and behavior. During direct examination, Martin testified as to the defendant's "walking very unsteady . . . all over the place"

with "a very strong odor of alcohol coming from his breath. His eyes were blood-shot. He was very unsteady on his feet. Again, staggering. And I noticed that he just couldn't stand still." When the defendant started to walk away, the officer had to tell him to stop and return. When asked why he did not stop, the defendant replied, "I was just going to see a friend." When asked who, he responded, "I forget." His performance on the field sobriety tests revealed that the defendant was very unsteady and lost his balance multiple times.

The prosecutor used the report to establish that the defendant's speech was "studdered [*sic*] and confused"; that he was unsteady and had a strong odor of alcohol; and that his clothes looked "mussed and soiled." On direct examination, Martin described the clothes as "messy," "with stains," and "dirty," all points previously testified to.

Under these circumstances we cannot say that there was a substantial risk of a miscarriage of justice, especially since the defense was also able to improperly use the report to its advantage.[8] Given the not guilty verdict on the second charge, it further appears that the jury was able to properly assess its role.

3. *The medical records.* The defendant argues that his hospital records from the night of his arrest should have been admitted as evidence at trial under G. L. c. 233, § 79, as an exception to the hearsay rule.[9] Citing *Commonwealth* v. *Moran,* 439 Mass. 482 (2003),[10] the defendant asserts that because the records did not contain any reference or notation to his having been intoxicated, the records were exculpatory.

---

[8]One further example appears during the defendant's direct examination, wherein he was asked, "Did you read the Alcohol Influence Report?" After he responded that he had, he was then asked, "Didn't it indicate that you were cooperative?" He answered in the affirmative.

[9]"Records kept by hospitals . . . may be admitted by the court, *in its discretion,* as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases and the court may, *in its discretion,* admit copies of such records . . ." (emphasis added). G. L. c. 233, § 79.

[10]In *Moran,* the sexual assault complainant testified that she had undergone a laparoscopy and been instructed to refrain from intercourse. The Supreme Judicial Court held that her medical records should have been admitted to impeach her testimony because they showed that she underwent a completely different procedure which did not involve instructions to refrain from intercourse. *Id.* at 488-489.

The trial judge ruled that the defendant's hospital records could not be admitted in evidence without a predicate basis. The judge was concerned that as observations of intoxication were not the focus of the hospital visit, the records could be misleading. More importantly, counsel was given the opportunity to call hospital personnel as witnesses to testify whether there was such an evidentiary basis, and whether the defendant showed signs of having used alcohol earlier that night,[11] which counsel declined. Lastly, the defendant was arrested at approximately 1:30 A.M., and began complaining of chest pains at around 4:00 A.M., at which point the paramedics were called and the defendant was transported to the hospital, where he remained for "at least an hour, hour and a half." Given the passage of time, and the reasons noted above, as cited by the judge, it was within her discretion to refuse to allow the introduction of the medical records.

*Judgment affirmed.*

---

[11]The judge indicated that "If a doctor was here, as a witness, he could testify as to his observations." The judge also would have allowed testimony concerning the practice and circumstances under which notations of intoxication would have been made in the records, thus establishing the predicate basis for their admission.