COMMONWEALTH *vs.* MELISSA REYNOLDS.

No. 04-P-1062.

Middlesex. October 18, 2005. - August 25, 2006.

Present: RAPOZA, BROWN, & GRAHAM, JJ.

*Motor Vehicle,* Homicide, Operating under the influence. *Intoxication. Intent. Evidence,* Intoxication, Intent, Relevancy and materiality, Communication between patient and psychotherapist. *Psychotherapist. Practice, Criminal,* Duplicative convictions.

At the trial of an indictment charging vehicular homicide by reckless or negligent operation while under the influence of narcotic drugs or depressants, in violation of G. L. c. 90, § 24G(*a*), the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that the defendant operated a motor vehicle recklessly or negligently after ingesting prescription medications that diminished her ability to drive safely, and that the defendant's intoxication was voluntary, in that she made a decision to take one or more of the prescription medications and then drive with full knowledge of the potentially adverse effects of the medications [217-223]; further, the trial judge did not err in admitting in evidence pharmacy records indicating the names and dosages of medications prescribed to the defendant [223] or in redacting certain irrelevant and inadmissible evidence [223-224].

INDICTMENT found and returned in the Superior Court Department on October 25, 2001.

The case was tried before *Thomas P. Billings,* J.

*Jane Larmon White,* Committee for Public Counsel Services, for the defendant.

*Loretta M. Lillios,* Assistant District Attorney, for the Commonwealth.

RAPOZA, J. This case presents the difficult issue concerning the quantum of evidence necessary to support a conviction of a criminal offense in which it is alleged that the defendant is under the influence of intoxicating, albeit legally prescribed, narcotics and depressants. Upon careful review of the record, we conclude that the Commonwealth presented sufficient evidence to establish

beyond a reasonable doubt that the defendant operated a motor vehicle recklessly or negligently after ingesting prescription medications that diminished her ability to drive safely. The Commonwealth also presented sufficient evidence that the defendant's impairment was due to at least one, if not more, of the prescribed narcotics or depressants for which she was charged under G. L. c. 90, § 24G(a).

*Background.* A Middlesex County grand jury returned a three-count indictment charging the defendant with (1) vehicular homicide by reckless or negligent operation while under the influence of narcotic drugs or depressants (felony vehicular homicide), G. L. c. 90, § 24G(a); (2) operating under the influence of narcotic drugs or depressants, G. L. c. 90, § 24; and (3) operating negligently[1] so as to endanger, G. L. c. 90, § 24. All charges arose from a violent single-car accident in which the defendant drove a pickup truck into a young cyclist, who later died as a result of his injuries.

As to the most serious conviction of felony vehicular homicide, the Commonwealth proceeded at trial in the Superior Court on the theory that at the time of the accident the defendant was under the influence of one or more of three prescription medications that met the statutory definition of narcotics or depressants: lorazepam (Ativan), diazepam (Valium), and oxycodone (Percocet) (collectively, scheduled drugs); that as a result of ingesting one or more of these drugs, the defendant's ability to drive safely was diminished; and that she operated her vehicle negligently or recklessly by leaving her lane of travel and colliding head-on with the victim, who was riding his bicycle on the sidewalk.[2]

The defendant moved, unsuccessfully, for required findings of not guilty, once at the close of the Commonwealth's case, again at the close of all of the evidence, and also after the verdicts were rendered. Defense counsel argued that there was insufficient evidence of intoxication by any scheduled drug and also claimed that even if the jury reasonably could conclude

[1]Operating recklessly was not charged.

[2]The Commonwealth presented no evidence that the defendant misused her prescription drugs or did not take them as directed, and no argument was made to the jury to that effect.

that the defendant was under the influence of one or more scheduled drugs, the Commonwealth failed to prove that her intoxication was voluntary.

The jury rendered guilty verdicts on all three offenses as charged, whereupon the judge sentenced the defendant on the felony vehicular homicide to a term of not less than two and one-half nor more than three years in State prison. The judge stayed the execution of that sentence pending the defendant's appeal and also placed on file the two other convictions, as lesser included offenses of the felony, apparently to await further disposition following the expected appeal.

*Discussion.* The defendant argues on appeal that (1) there was insufficient evidence of her voluntary intoxication by any of the scheduled drugs at or near the time of the accident such that her ability to drive was impaired; (2) certain pharmacy records, as purportedly privileged communications pursuant to G. L. c. 233, § 20B (the psychotherapist-patient privilege), should have been excluded from evidence at trial; (3) the judge erred in keeping from the jury certain comments made by the defendant during her September 6, 2001, interview with the police; and (4) in the event that the defendant's felony conviction is affirmed, her convictions of operating while under the influence of intoxicating narcotic drugs or depressants and operating to endanger should be dismissed as duplicative.

1. *Motions for required findings of not guilty.* The defendant first focuses on the issue of her alleged consumption of one or more narcotics or depressants, as defined in G. L. c. 90, § 24G(*a*), at or near the time of the fatal collision. Specifically, we are asked to determine whether a rational trier of fact could conclude beyond a reasonable doubt that the defendant's inability to drive in a safe manner was caused, at least in part, by her ingestion of one or more of the scheduled drugs.[3] See *Commonwealth* v. *Connolly*, 394 Mass. 169, 173 (1985) (burden is on the Commonwealth to prove beyond a reasonable doubt that

---

[3]Not in dispute here is whether the defendant was operating a motor vehicle upon a public way, a fact to which the parties agreed at trial. Nor does the defendant argue on appeal that the Commonwealth failed to prove that she operated negligently or recklessly or that her operation of a motor vehicle caused the death of another.

"defendant's consumption of [a scheduled drug] diminished the defendant's *ability* to operate a motor vehicle safely"). See also *Commonwealth* v. *Stathopoulos*, 401 Mass. 453, 457 (1988) ("It is enough if the defendant's capacity to operate a motor vehicle is diminished because of [intoxicating narcotics or depressants], even though other, concurrent causes contribute to that diminished capacity").

While we agree that the element of ingestion may be proved by circumstantial evidence, the evidence and the inferences permitted to be drawn therefrom must be "of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Commonwealth* v. *Cooper*, 264 Mass. 368, 373 (1928). In the present case, evidence of the defendant's erratic operation and how she appeared at the scene, together with her own admissions and circumstantial evidence of her access to and ongoing usage of prescription narcotics and depressants, met that standard of proof. See *Commonwealth* v. *Johnson*, 59 Mass. App. Ct. 164, 172 (2003) ("Even without the erroneously admitted hospital record, the defendant's erratic behavior and appearance, the facts surrounding the accident itself, and the discovery of cocaine and other controlled substances inside the vehicle permitted the inference that the defendant's capacity to operate was impaired by a narcotic drug"). See also *Commonwealth* v. *Hilton*, 398 Mass. 63, 66-68 (1986); *Commonwealth* v. *Sauer*, 50 Mass. App. Ct. 299, 303 (2000); *Commonwealth* v. *Lampron*, 65 Mass. App. Ct. 340, 341-344 (2005).[4]

A jury in this particular case could have found the following facts, which we view in the light most favorable to the Commonwealth. On September 1, 2001, at approximately 1:15 P.M., the defendant drove a pickup truck northbound on Route 111, heading from Ayer to Groton, a road with which the defendant was very familiar. The weather was clear and the

---

[4]No blood or urine tests were performed on the defendant, and no scientific evidence concerning the actual presence or absence of drugs in the defendant's system was before the jury. Consequently, we do not address the issue raised in *Commonwealth* v. *Shellenberger*, 64 Mass. App. Ct. 70, 76 (2005), which dealt with the foundation necessary for the introduction of such evidence.

pavement dry. Just south of the Groton line, witnesses saw the defendant speeding and swerving across the two-lane road, barely avoiding a collision with oncoming traffic. Moments later, about a mile or two further north, in Groton, the defendant swerved off the road at a point where it makes a gradual turn to the left, fatally striking thirteen year old Evan Holofcener as he rode his bicycle on the sidewalk. Evan's body came to rest at the base of a tree, approximately sixty-four feet from the point of impact.

As the jury heard from expert testimony, narcotics and depressants taken in doses similar to those prescribed to the defendant act upon the body's central nervous system, often causing such side effects as drowsiness and an inability to focus and coordinate movements, two skills necessary to safe driving. In this case, the evidence demonstrated that the defendant struck Evan without having taken any evasive action, such as applying her brakes, although she had enough time to do so. In fact, she was not even aware until much later that she had hit someone.[5] Moreover, just after the collision, the defendant appeared to a Groton police officer, someone who knew her personally, to be uncharacteristically "low key" and "subdued" given the circumstances. Indeed, the same officer came to the conclusion, based on his training and experience, that the defendant was under the influence of some intoxicant.[6]

Consequently, from the existing road conditions, the manner in which the accident occurred, and the defendant's conduct just prior to and immediately after the collision, the jury reasonably could have inferred not only that the defendant was driving recklessly or negligently, determinations that are undisputed on appeal, but also that she showed signs of inattentiveness and lack of control over her vehicle — both indicators that she was impaired by an intoxicating substance. See *Commonwealth* v. *Marley*, 396 Mass. 433, 442 (1985) (the fact of an accident corroborates other evidence of driving while intoxicated).

[5]Within minutes of the accident, while the defendant was still inside the cab of the overturned truck, she said, "I didn't hit anyone, did I?"

[6]Although the officer did not ask the defendant to submit to any field sobriety tests, he apparently ruled out alcohol as the cause of her intoxication as he detected no smell of alcohol.

In addition to evidence of the defendant's erratic driving and her "low key" appearance thereafter, there was also ample evidence permitting a reasonable inference that the defendant took one or more of the scheduled drugs on the date in question. Such evidence includes her own admissions to medical personnel, at the scene and in the emergency room, that she currently was taking prescribed medication, which included the three scheduled drugs.[7]

The Commonwealth also introduced at trial pharmacy records for the period May 26 through September 24, 2001, which established that the defendant had filled prescriptions for all three scheduled drugs at various intervals throughout that time frame.[8] The last transaction, for a fourteen-day supply of Ativan, had taken place on August 31, 2001, the day before the accident. Ativan is often prescribed to treat insomnia or anxiety, and the defendant admitted having sleeping problems on the night of August 31 and generally. Two milligrams, the strength most recently prescribed to the defendant, is considered to be a sedating dose and the maximum for a one-time use. The effects of such a dose can remain in one's system for up to twenty-four hours.

The pharmacy records also indicate that on August 29, 2001, the defendant filled two other prescriptions — one for Percocet, a painkiller prescribed by her dentist on an "as needed" basis subsequent to a recent tooth extraction, and the other for Effexor, a nonscheduled prescription drug the defendant admitted having taken at breakfast just before leaving her house on the day of the accident. A prescription for Valium last had been filled on July 17 and contained sixty pills, which was indicated to be a thirty-day supply. The defendant continued to obtain refills for Valium after the accident, on September 11 and 24.

The jury thus reasonably could have inferred from the defendant's statements and the pharmaceutical records that the

---

[7]The emergency room nurse noted in the medical record that the Percocet and Valium were "PRN," a term indicating that the medication was to be taken on an "as needed" basis.

[8]Although the defendant objected to the introduction of these records and raises this issue on appeal, as we discuss *infra*, the judge did not err when he overruled the objection.

three scheduled drugs implicated here were available to the defendant and that she was consuming them as prescribed and on a fairly regular basis, even those that were designated "as needed." At a minimum, the jury reasonably could have inferred from her statements concerning her insomnia and from the number of pills of Ativan provided to the defendant on previous occasions and on the day before the accident, that she took at least one sedating dose of Ativan at bedtime, around 3:00 A.M. on the morning of September 1, which was also the time she admittedly took Topamax and Zyprexa (both nonscheduled drugs) as prescribed. The jury further rationally could have concluded that the dose of Ativan continued to affect her ability to drive safely when she took to the road and shortly thereafter crashed into Evan around 1:15 P.M.[9]

The jury also could have inferred consciousness of guilt on the defendant's part from the inconsistent statements she made to medical personnel and later to police officers when questioned, in the aftermath of the accident, about her current medications. Her failure to mention any of the scheduled drugs during her subsequent interviews with police officers could be viewed as deceptive, made after she had an opportunity to prevaricate. See *Commonwealth* v. *Basch*, 386 Mass. 620, 624 (1982) ("A defendant's intentionally false statements about material particulars show consciousness of guilt").

With respect to the defendant's claim that any intoxication she suffered was involuntary and thus not criminally culpable conduct, the record indicates otherwise. Moreover, to the extent that the defendant quarrels with the judge's instruction concerning voluntary intoxication and argues that a person who takes a scheduled drug as medically prescribed never may be found

---

[9]To the extent that the jury heard evidence of the defendant's ingestion of a number of nonscheduled drugs that are known to cause either dizziness or drowsiness or both, in some patients, they reasonably could have inferred that her voluntary consumption of those drugs during the operative time frame may have amounted to negligence. See *Commonwealth* v. *Smith*, 35 Mass. App. Ct. 655, 660 (1993), citing *Commonwealth* v. *Woods*, 414 Mass. 343, 350 (1993). As the judge instructed, apparently in accordance with *Commonwealth* v. *Stathopoulos*, 401 Mass. at 455-458 & n.4, the jury were to consider only her ingestion of one or more of the scheduled drugs in determining whether the defendant was intoxicated, even though some other cause tended to magnify the effect of those drugs.

criminally responsible for operating under the influence of intoxicants, that is not the state of the law in Massachusetts. We have indicated that the Legislature did not intend to penalize a person (for operating a motor vehicle while under the influence of an intoxicant) who drives after consuming a therapeutic dose of a prescription drug unaware of its possible effects. See *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 365 (1982). See also *Commonwealth* v. *Dale*, 264 Mass. 535, 537 (1928); *Commonwealth* v. *Darch*, 54 Mass. App. Ct. 713, 716 (2002). Yet, we have not ruled out the possibility of imposing criminal liability in circumstances where, as here, the defendant had reason to know of the drug's possible effects on her driving ability. See *Commonwealth* v. *Wallace, supra* at 365 & n.15.

Our review of the record leads us to conclude that there was sufficient evidence that the defendant was well aware of the potentially adverse effects of all three scheduled drugs, as evidenced by the written warnings she received with each prescription, her dentist's usual practice of cautioning his patients to avoid driving while taking Percocet, and also from the defendant's own acknowledged previous experience with the sedating effects of her medication. Indeed, in her September 2, 2001, statement to a police sergeant, she admitted that she would refrain from driving when she felt incapacitated from her prescriptions. As an example, she mentioned that she had her boyfriend drive the two to get dinner the evening of the day of the accident because she "didn't feel okay to drive." Thus, the jury reasonably could have concluded that the defendant's decision to take one or more of the scheduled drugs and then drive on that fateful day was voluntary, i.e., with full knowledge of their anticipated effects.[10]

In sum, the evidence presented by the Commonwealth on the

---

[10]Concerning the matter of voluntary intoxication, the judge instructed the jury that they had to determine whether the defendant *actually* knew of the consequences of the scheduled drugs she consumed. Although we do not consider the correctness of this part of the judge's instruction, the defendant may have received more than that to which she was entitled. See *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. at 360 ("The main thrust of G. L. c. 90, § 24(1)(*a*) [operating under the influence], is directed at the voluntary consumption of alcohol or drugs whose consequences are known or *should be known* to the user" [emphasis supplied]).

essential element of intoxication supported the defendant's convictions beyond a reasonable doubt, and consequently, the judge was correct to deny the defendant's motions for required findings of not guilty at every relevant stage of the proceedings.

2. *The pharmacy records.* We discern no error in the trial judge's decision to allow the admission of pharmacy records indicating the names and dosages of medications prescribed to the defendant, her doctors' names, and the dates of purchase by the defendant between May 26 and September 24, 2001. First, even if we were to conclude that the protections afforded by G. L. c. 233, § 20B, extend to an agency relationship between the licensed psychotherapist and a third party, as the defendant argues, nothing in the record indicates that her psychotherapist had the right to control the pharmacist or that the pharmacist manifested the requisite consent to act as an agent. See *Commonwealth* v. *Rosenberg*, 410 Mass. 347, 354 (1991); *Commonwealth* v. *Clemons*, 12 Mass. App. Ct. 580, 584-587 (1981). See also *Commonwealth* v. *Senior*, 433 Mass. 453, 455-457 (2001). Thus, such records are not privileged "communications," i.e., "conversations, correspondence, actions and occurrences [between patient and psychotherapist] relating to diagnosis or treatment," pursuant to G. L. c. 233, § 20B, inserted by St. 1968, c. 418. Nor are they "records, memoranda or notes of the foregoing," *ibid.*, as they merely document, in part, the names of the defendant's psychotherapists and certain medications prescribed by them and purchased by the defendant. Cf. *Adoption of Saul*, 60 Mass. App. Ct. 546, 551-552 (2004) ("General Laws c. 233, § 20B, . . . protects from compelled disclosure conversations and other communicative conduct . . . which relate to diagnosis or treatment, but not the diagnosis itself"), and cases cited.

3. *The redacted interview.* We have reviewed the transcript of the September 6, 2001, interview, as well as the audiotape, which was played to the jury and admitted as an exhibit, and conclude that the judge did not abuse his discretion in redacting several lines of the defendant's statement to Groton police officers.[11]

Citing the doctrine of "verbal completeness," the defendant

---

[11]The excised segment reads as follows: "But I have driven when I've been

argues that the jury should have been allowed to hear what her doctor told her concerning her ability to drive while taking her prescription medication. We agree with the trial judge, however, that the only fair reading of the excised segment was that the alleged conversation with the defendant's doctor took place on September 5, four days after the collision. Because of the timing of the alleged conversation, the statement was not relevant and thus was not admissible as state of mind evidence. Cf. *Commonwealth* v. *Weichel*, 403 Mass. 103, 106-108 (1988).

As to the rule of verbal completeness, the defendant's argument also fails because the excised statement neither explained nor qualified the rest of the police interview, which did not allude to warnings the defendant may have received concerning her medications. See *Commonwealth* v. *Flaherty*, 61 Mass. App. Ct. 776, 779-880 (2004).

4. *Lesser included offenses.* The parties agree, correctly, that as matter of law, the defendant's convictions of operating under the influence of an intoxicating substance (indictment no. 2001-1217-002) and operating to endanger (indictment no. 2001-1217-003) are duplicative of the defendant's conviction of felony vehicular homicide. See *Commonwealth* v. *Jones*, 382 Mass. 387, 394-395 (1981). These two lesser included offenses are not before us, however, having been filed pending appeal. Because we do not consider appeals of convictions placed on file absent exceptional circumstances that are not present here, we leave it to a Superior Court judge to entertain a motion by the defendant regarding her convictions of the two lesser included offenses. See *Commonwealth* v. *Sanchez*, 405 Mass. 369, 382 n.8 (1989).

*Judgment affirmed.*

---

on these medications, and the doctor said that it was completely fine for me to be driving on them, because I asked him yesterday when she [*sic*] was there, when I was in therapy, and he said it was fine. He said they have no effect on your driving."