COMMONWEALTH *vs.* MATTHEW C. ADDY.

No. 09-P-1067.

Berkshire. December 13, 2010. - July 26, 2011.

Present: KAFKER, SMITH, & HANLON, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Expert opinion, Consciousness of guilt.

In criminal proceedings arising from an automobile accident, the motion judge did not abuse his discretion in denying without a hearing the defendant's motion to preclude testimony by the Commonwealth's accident reconstruction expert as to the cause and location of the accident, where the defendant failed to argue why it was necessary, in this particular instance, for the expert to utilize scientific methods, analysis, or mathematical calculations in forming his opinion [838-839]; further, the trial judge was not required to conduct a hearing on the motion, and where the testimony was the subject of vigorous cross-examination at trial and was disputed by contrary evidence, there was no abuse of discretion in allowing in evidence the expert's opinion testimony [839-840].

The evidence at a criminal trial was sufficient to demonstrate that the defendant operated a motor vehicle while under the influence of intoxicating liquor, negligently endangering the lives or safety of the public, and by such operation caused the death of another person, in violation of G. L. c. 90, § 24G(*a*). [840-841]

Error in the admission of certain consciousness of guilt evidence (i.e., a criminal defendant's default on the initial trial date) was not prejudicial in the circumstances of a criminal case. [841-842]

INDICTMENTS found and returned in the Superior Court Department on September 7, 2006.

A pretrial motion to exclude expert testimony was heard by *John A. Agostini,* J., and the cases were heard by *Peter A. Velis,* J.

*Patricia Quintilian* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On September 1, 2006, the defendant, Matthew

Addy, was the subject of two indictments charging him with (1) operating a motor vehicle while under the influence of intoxicating liquor, negligently endangering the lives or safety of the public, and by such operation causing the death of another person, G. L. c. 90, § 24G(*a*); and (2) failing to operate a motor vehicle within marked lanes, G. L. c. 89, § 4A. The indictments arose out of a fatal accident that occurred in Adams. After a trial before a Superior Court judge sitting without a jury, the defendant was found guilty on both indictments.[1]

On appeal, the defendant claims that two Superior Court judges, one the motion judge, the other the trial judge, erred in denying his *Daubert-Lanigan* motion[2] to exclude the testimony of the Commonwealth's accident reconstruction expert as to the cause and location of the accident. The defendant also argues that the trial judge erred in (1) denying his motion for required finding of not guilty, and (2) admitting consciousness of guilt evidence regarding his failure to appear on a date previously scheduled for trial.

1. *The* Daubert-Lanigan *motion.* Prior to trial, the defendant filed a motion in limine to preclude the Commonwealth from introducing in evidence the opinion of its accident reconstruction expert, State Trooper David Sanford. Trooper Sanford opined that while driving north on North Summer Street in Adams, the defendant left his lane of travel, crossed over a double yellow line, went into the southbound lane, and struck a motorcycle, resulting in the death of the motorcycle operator. The defendant's expert disagreed, asserting that the decedent, traveling in the southbound lane, crossed the double yellow line into oncoming traffic and struck the defendant's vehicle in the northbound lane.

In the motion, the defendant claimed that Trooper Sanford's opinion was not reliable because he failed to utilize any scientific methods, analysis, or mathematical calculations in forming his opinion that the collision occurred in the southbound lane. Therefore, according to the defendant, Trooper Sanford's testi-

---

[1]The defendant was sentenced on the first indictment to six to seven years at the Massachusetts Correctional Institution at Cedar Junction. The second indictment was placed on file and is not before us.

[2]See *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993); *Commonwealth* v. *Lanigan,* 419 Mass. 15 (1994).

mony did not meet the standards of admissibility set forth in *Daubert* v. *Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (*Daubert*), and *Commonwealth* v. *Lanigan*, 419 Mass. 15 (1994) (*Lanigan*). An affidavit from the defendant's accident reconstruction expert accompanied the motion. The defendant requested an evidentiary hearing. In response to the motion, the Commonwealth submitted Trooper Sanford's collision reconstruction report (report).

The defendant does not challenge the science of accident reconstruction.[3] Rather, he claims that the motion judge and the trial judge erred by failing to determine whether Trooper Sanford, in reaching his opinion, correctly applied the science of accident reconstruction to the particular facts in this case in a reliable manner. See *Commonwealth* v. *Patterson*, 445 Mass. 626, 645-648 (2005).

At the motion hearing, after reading Trooper Sanford's report and listening to the arguments of counsel, the judge decided not to hold an evidentiary hearing and ruled that Trooper Sanford's opinion was admissible at trial because there was a factual basis for his opinion, and it was therefore reliable.

At trial, the defendant moved for reconsideration of his *Daubert-Lanigan* motion by the trial judge (who was not the motion judge). The trial judge refused to consider the motion but offered to send it to the motion judge for his reconsideration. At that point, the defendant withdrew his motion. The trial judge stated he would consider the admissibility of Trooper Sanford's opinion testimony after he had testified. The defendant agreed to that procedure. At the conclusion of Trooper Sanford's testimony, the defendant moved to strike, claiming that the factual basis of the opinion was unreliable. The trial judge denied the motion, and the defendant claims error.

Prior to the admission of scientific or technical evidence, a "judge must first rule on any challenge to the validity of any

---

[3] At the motion hearing, defense counsel agreed with the motion judge that expert testimony pertaining to accident reconstruction is commonly accepted in the Commonwealth's trial courts. In fact, the defendant intended to introduce at trial the testimony of his expert in accident reconstruction to support his theory that it was the decedent who crossed over the center line into the defendant's lane.

process or theory underlying a proffered [scientific or technical] opinion. 'This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.' " *Lanigan,* 419 Mass. at 26, quoting from *Daubert,* 509 U.S. at 592-593. See *Kumho Tire Co.* v. *Carmichael,* 526 U.S. 137, 141 (1999) (*Daubert* applies to testimony of engineers and other experts who are not scientists). In acting as gatekeeper, the judge may, but is not required to, hold an evidentiary hearing. *Palandjian* v. *Foster,* 446 Mass. 100, 111 (2006). We review the claimed errors under the abuse of discretion standard, see *Canavan's Case,* 432 Mass. 304, 311-312 (2000), addressing the claims of error at each stage of the proceedings.

a. *The evidence at the motion hearing.* The record before the motion judge consisted of Trooper Sanford's report. We summarize its contents. Trooper Sanford was dispatched to the accident scene shortly after the accident. Upon arrival at the scene, the trooper observed the defendant's vehicle and the decedent's motorcycle in the southbound lane, against another vehicle parked at the southbound curb. According to the report, at the time of the collision, the decedent was ejected from his motorcycle, struck the defendant's vehicle's windshield with his head, then traveled over that vehicle and fell to the road behind the defendant's vehicle in the southbound lane. Trooper Sanford observed gouge marks,[4] scratches, and scuff marks[5] in the southbound lane. The trooper ordered photographs to be taken and later made measurements at the scene. He also read witnesses' statements, including one from a witness who stated that he observed the defendant's vehicle cross the center line just before the collision. The report concluded with Trooper Sanford's opinion that "this collision was caused by the failure of [the defendant] to stay within marked lanes. All the pavement evidence, scratches, gouges and scuff marks were in the southbound lane. A witness observed [the defendant's vehicle] cross

---

[4]Defense counsel stated at the motion hearing that a "gouge" mark refers to a mark made when the force of a collision is transferred downward, causing the chassis to drop down and dig into the pavement.

[5]A scuff mark is a tire mark made by a freely rotating tire; a scratch mark is a narrow superficial mark in the surface of the roadway.

the centerline. Further, medical evidence indicates that the [defendant] was operating under the influence of intoxicating liquor: 0.24% BAC."

It is clear that Trooper Sanford's conclusions were based, in large measure, on the observations he made at the accident scene. The defendant argues that observations are not enough, and that Trooper Sanford should have utilized scientific methods, analysis, or mathematical calculations in forming his opinion. The defendant failed to argue why, in this particular instance, it was necessary for the trooper to employ such devices.[6] We conclude that the motion judge did not abuse his discretion in denying the defendant's motion without an evidentiary hearing.

b. *Trooper Sanford's testimony at trial.* The defendant further claims that the trial judge erred when he did not conduct a *Daubert-Lanigan* hearing at trial. We reject the defendant's claim and conclude that once a judge has decided a *Daubert-Lanigan* motion before trial, the trial judge is not required to conduct another hearing on the motion, even if the trial judge was not the judge who had ruled earlier on the motion.

We recognize, however, that the motion judge's ruling was not final, and it is clear that the defendant could still challenge Trooper Sanford's opinion before the trier of fact, here the trial judge. See *Higgins* v. *Delta Elevator Serv. Corp.*, 45 Mass. App. Ct. 643, 648 (1998). In that regard, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Ibid.*, quoting from *Daubert*, 509 U.S. at 596.

At trial, Trooper Sanford testified in accord with his report. Further, he stated that he measured the gouge marks he observed in the southbound lane and they matched marks he found on the undercarriage of the defendant's vehicle. On cross-examination, he testified that he did not perform any empirical mathematical equations and did not make any momentum calculations: "[b]ecause [of] the relative size of the two vehicle[s], the car is

---

[6]In the defendant's brief, appellate counsel repeatedly cites trial testimony of Trooper Sanford and the defendant's expert to support his argument that the motion judge should have allowed his *Daubert-Lanigan* motion. None of the cited testimony was before the motion judge, and we do not consider it.

much heavier than the motorcycle and throws the mathematical calculation off." The fact that Trooper Sanford did not perform certain tests goes to the weight of his testimony, not its admissibility.

Richard Montefusco, an accident reconstruction expert, testified for the defense. He first examined the accident scene on May 4, 2007, over nine months after the accident. Montefusco did not see gouge marks on the road, and he challenged Trooper Sanford's testimony that the marks in the road that he observed were gouge marks.

Montefusco testified that the debris in the roadway, including glass in the northbound lane, indicated that the collision had actually occurred in the northbound lane rather than the southbound lane. According to Montefusco, and relying on the "tumble equation" as it applied to the glass found in the northbound lane, the collision took place further south than Trooper Sanford claimed. Montefusco admitted, however, that the "tumble equation" was only applicable for such things as tumbling cars and bodies, not sliding objects such as shards of glass.

At trial, Trooper Sanford's testimony was the subject of vigorous cross-examination and was disputed by contrary evidence. The trial judge did not abuse his discretion in allowing in evidence Trooper Sanford's opinion testimony.

3. *Sufficiency of the evidence.* The defendant claims that the trial judge erred in denying his motion for a required finding of not guilty. According to the defendant, the Commonwealth failed to prove "that the consumption of alcohol diminished the defendant's capacity to operate a motor vehicle safely causing him to act recklessly or negligently so as to endanger the lives and safety of the public."[7]

In reviewing the denial of a motion for a required finding of not guilty, we must determine "whether the evidence, in its light most favorable to the Commonwealth . . . is sufficient . . . to permit the [fact finder] to infer the existence of the essential elements of the crime charged [beyond a reasonable doubt . . . ." *Commonwealth* v. *Latimore,* 378 Mass. 671,

---

[7] After the accident, the defendant's blood alcohol level was determined to be 0.24 percent.

676-677 (1979), quoting from *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975).

We summarize the evidence. On July 23, 2006, the defendant left his apartment at about 11:00 P.M., because he was upset with his upstairs neighbor for loud parties that kept his daughter awake. At the time he left his apartment, he had consumed seven beers. He went to a bar in Adams. After leaving the bar shortly before 12:00 A.M., the defendant drove north on North Summer Street in Adams. That street, a public way, is divided by a double yellow line. At the same time, the decedent was riding his motorcycle south on North Summer Street. The decedent had been drinking, and although his blood alcohol level was 0.29 percent at the time of the accident, his driving did not appear to be impaired. As the vehicles approached each other, the defendant was seen talking on a cellular telephone. Moments before the accident, the defendant's vehicle was observed straddling the double yellow line with one set of wheels on the west side of the yellow line and one set of wheels on the east side of the line. The vehicles collided, and the decedent was thrown into the air and over the defendant's vehicle. His helmet was embedded in the windshield of the defendant's vehicle. The decedent was pronounced dead at the scene. As we have stated, Trooper Sanford testified that it was his opinion that the defendant's vehicle failed to stay in the northbound lane, crossed over the double yellow line, and struck the decedent's motorcycle in the southbound lane.[8] Based on the evidence, the trial judge did not err in denying the defendant's motion.

3. *Consciousness of guilt.* On the first day of trial, the Commonwealth filed a motion that it be allowed to use the defendant's default on the initial trial date as evidence of consciousness of guilt. The trial judge allowed the motion over the defendant's objection.

The Commonwealth acknowledges that a default that is entered because a defendant fails to appear on a scheduled trial date may be properly considered as consciousness of guilt only if the defendant received notice of the trial date. See

---

[8]In the defendant's brief, appellate counsel ignores the requirement that the evidence must be viewed in the light most favorable to the Commonwealth and summarizes the defendant's evidence.

*Commonwealth* v. *Hightower*, 400 Mass. 267, 269 (1987). Here, the Commonwealth did not present any testimony as to the question of notice but, rather, relied on the docket. The docket does show that the defendant was originally held on $30,000 cash or $300,000 surety when he was arraigned on September 13, 2006. The bail was lowered to $10,000 cash or surety on November 13, 2006, and the defendant posted bail on December 19, 2006.

There is nothing in the docket between December 19, 2006, and March 20, 2008, that demonstrates that a trial date had been scheduled and that the defendant had notice of that date. It was error to admit the evidence, but the error was not prejudicial in the circumstances of this case. See *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998).

*Judgments affirmed.*