NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1381

COMMONWEALTH

vs.

ALEC BUTLER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury-waived trial, the defendant, Alec Butler, was convicted of motor vehicle homicide by negligent operation, G. L. c. 90, § 24G (b), for the killing of the victim, Richard F. Sullivan, Jr.  The defendant appeals, arguing that the evidence was insufficient to prove that he operated his vehicle negligently and the judge erred in allowing the Commonwealth's request that she instruct herself on consciousness of guilt.  We affirm.

Background.  Beginning at about 8:30 A.M. on August 5, 2019, both the defendant and the victim played in a charity golf tournament.  Over the course of five to six hours while golfing,

the defendant drank several beers.  At the golf tournament awards ceremony, he drank another beer.

At about 6 P.M., the defendant and the victim went together to a restaurant, where the defendant ate pizza and drank two beers and a shot of whiskey.  The defendant did not appear to be intoxicated.  At 7:09 P.M., the defendant and the victim left the restaurant together.  In the parking lot, they encountered a mutual friend who was a retired Marlborough firefighter.

The defendant and the victim got into the defendant's gray Mercedes-Benz sport utility vehicle (SUV), with the defendant driving and the victim in the front passenger seat.  The sun was still out, it was bright and clear, and the roads were dry.  The defendant drove eastbound on Broadmeadow Street, where the speed limit is thirty-five miles per hour.  Traveling at about thirty-seven miles per hour, the SUV passed the intersection of Parmenter Street, after which Broadmeadow Street bends slightly.

At about 7:18 P.M., there was a loud crash, "like a bomb went off."  A woman who lived nearby ran toward the sound and saw the SUV off the right side of Broadmeadow Street.  The SUV had traveled over several large rocks, some of which were about the size of basketballs, and collided with a large tree.  The SUV had extensive body damage, its windows were shattered, and its airbags had deployed.  The defendant was in the driver's

2

seat and said, "What happened?"  He started to get out of the SUV, but the woman told him to wait for first responders.  She smelled gasoline, so she reached into the SUV and turned off the ignition.

Within minutes, Trooper Jeffrey Hernandez arrived.  When the trooper approached the SUV, the defendant got out from the driver's seat.  He appeared to be "stunned and in a daze."  He had a cut on his forearm and a shoulder injury.  The defendant told Trooper Hernandez that there was another vehicle involved in the collision.  First responders did not see any other vehicle leaving the scene.

In contrast, questioned by Marlborough police Lieutenant Steven Lupien, the defendant said he did not know how the crash occurred.  He also said he did not know whether there was any passenger in the SUV other than the victim, whose name the defendant told to police.

First responders from the Marlborough fire department arrived.  In the front passenger seat, the victim was struggling to breathe.  A large boulder was blocking the front passenger door of the SUV, making it difficult for paramedics to access him.  To extricate the victim, first responders cut the roof off the SUV, put him on a backboard, and slid him out through the

3

driver's side. The victim was taken by ambulance to a hospital. He died of multiple blunt force injuries caused by the crash.

The defendant was also taken by ambulance to a hospital. En route, he told a paramedic that he was driving the SUV but did not remember the crash. Asked what he was doing before the crash, the defendant said that he and the victim were coming "straight" from a golf tournament, and that he "was drinking earlier in the day, but hadn't had a drink in a couple hours." The paramedic inserted an intravenous tube into the defendant's hand in anticipation of any further treatment at the hospital. The defendant asked if the paramedic was going to draw the defendant's blood; the paramedic said no. At 7:58 P.M., the ambulance arrived at the hospital. Before the paramedics had completed their administrative duties and left the hospital, the defendant left the emergency room against medical advice and without being treated for his injuries. Two days later, he went to a different hospital for treatment.

Neither police nor first responders detected symptoms of the defendant's intoxication. The SUV was towed to the Marlborough police station. Inside it was a single crushed beer can.

State police collision reconstructionist Lieutenant Daniel J. Nicoloro documented evidence from the crash scene, examined

4

the SUV, and analyzed data from its event data recorder. There was no evidence that weather or poor visibility contributed to the crash. There were no defects in the roadway that contributed to the crash, and no tire marks that would have indicated that the SUV swerved to avoid an obstacle in the road. The SUV had no mechanical defects that contributed to the crash; its brakes and accelerator were functioning, and its tires were in good shape. However, the SUV's undercarriage was significantly dented and scraped from running over the rocks. Embedded in the tree up to almost six feet off the ground were glass fragments, including tinted glass from the SUV's sunroof.

The SUV's event data recorder showed that the defendant was not wearing his seatbelt. Data revealed that five seconds before the airbag control module activated, the SUV was traveling at thirty-seven miles per hour. As the SUV drove over the large rocks on the soft shoulder of Broadmeadow Street, it decelerated by about sixteen miles per hour, causing the airbag control module to activate. During those five seconds, the brake was never applied and the accelerator was depressed slightly. As the SUV continued, the brake was applied. Based on his investigation, Lieutenant Nicoloro opined that the SUV drove partway through the curve on Broadmeadow Street and then continued straight off the side of the road and over several

5

large rocks, rotating side to side as it did so, and then bounced, struck the tree, and fell back down on its wheels.

The judge found the defendant guilty of motor vehicle homicide by negligent operation.[1]  The defendant appeals.

Discussion.  1.  Sufficiency of the evidence.  The defendant argues that the judge erred in denying his motion for a required finding of not guilty because the evidence was insufficient to prove that he operated the SUV "negligently so as to endanger human life or safety."  See G. L. c. 90, § 24G (b).[2]  We review the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Njuguna, 495 Mass. 770, 771-772 (2025), citing Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).

Negligence under G. L. c. 90, § 24G (b), is determined by the same standard that is employed in tort law.  Commonwealth v. Teixeira, 95 Mass. App. Ct. 367, 369 (2019), quoting Commonwealth v. Duffy, 62 Mass. App. Ct. 921, 922 n.2 (2004).  "A finding of ordinary negligence is sufficient to establish a

---

[1] The judge also found the defendant responsible for the civil infraction of failing to wear a seat belt, G. L. c. 90, § 13A.  That finding was placed on file and is not before us.

[2] The defendant does not contest the sufficiency of the proof that he operated the SUV on a public way and caused the death of the victim.

violation of the statute." Commonwealth v. Carlson, 447 Mass. 79, 85 (2006). Ordinary negligence "is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which . . . the person of ordinary caution and prudence ought to exercise under the particular circumstances." Commonwealth v. Howe, 103 Mass. App. Ct. 354, 358 (2023), quoting McGovern v. State Ethics Comm'n, 96 Mass. App. Ct. 221, 232 n. 25 (2019). In the context of motor vehicles, the Supreme Judicial Court has defined negligence as the failure "to operate [an] automobile in a reasonably careful and prudent manner." Remy v. MacDonald, 440 Mass. 675, 680 (2004), citing Buda v. Foley, 302 Mass. 411, 413 (1939).

To support a conviction of negligent operation, the Commonwealth was required to prove that the defendant's "conduct, taken as a whole, might have endangered the lives and safety of the public." Teixeira, 95 Mass. App. Ct. at 370. See Commonwealth v. Sousa, 88 Mass. App. Ct. 47, 51 (2015) (question is whether defendant's driving had potential to cause danger to public). Proof of the defendant's negligent operation of a motor vehicle may "rest entirely on circumstantial evidence." Howe, 103 Mass. App. Ct. at 358, quoting Commonwealth v. Petersen, 67 Mass. App. Ct. 49, 52 (2006).

7

Perhaps most compellingly, the defendant's negligence was shown by the evidence of his driving. Driving on a well-lit, dry road, the defendant failed to negotiate a gradual bend and drove his SUV off the road. See Commonwealth v. Reynolds, 67 Mass. App. Ct. 215, 219 (2006) (evidence that defendant "swerved off the road at a point where it makes a gradual turn" added to proof that she "showed signs of inattentiveness and lack of control over her vehicle"). See also Commonwealth v. Campbell, 394 Mass. 77, 83 (1985) (evidence of negligent operation included that "[t]he area was well-lit, the weather clear, and the traffic normal"). The defendant drove for some distance over rocks before striking the tree hard enough to cause multiple blunt force injuries to the victim. Contrast Aucella v. Commonwealth, 406 Mass. 415, 418-419 (1990) ("no evidence of the level of care actually exercised by the driver," where car struck pedestrians crossing unlighted highway). The defendant caused extensive damage to the SUV and the tree. See Howe, 103 Mass. App. Ct. at 359 ("extensive damage" to defendant's car and surroundings relevant to negligence).

Negligence was also shown by what the defendant did not do: during the five seconds before the airbag control module activated, he did not brake, although he did brake in the one and one-half seconds before the SUV hit the tree. Cf.

8

Commonwealth v. Hardy, 482 Mass. 416, 424 (2019) (defendant's failure to brake before collision showed "inattentiveness to the road"); Reynolds, 67 Mass. App. Ct. at 219 (defendant struck pedestrian "without having taken any evasive action, such as applying her brakes").  The defendant attempts to distinguish Hardy by arguing that in that case the defendant did not brake at all, but here, the defendant did brake just before impact.  We are not persuaded.  Evidence that the defendant braked immediately before impact did not preclude a finding of negligence based on his failure to brake during the five seconds before the airbag control module activated.  The judge could credit the testimony of Lieutenant Nicoloro -- based on the data from the event data recorder, the damage to the SUV's undercarriage, and his inspection of the crash scene -- that during those five seconds the brake was not applied and the SUV was decelerating because it was driving over large rocks.

As evidence of negligence, the judge could also consider the defendant's consumption of alcohol.  "Although there was no direct evidence of the defendant's impairment, there was substantial direct evidence of his consumption of alcohol." Commonwealth v. Morse, 468 Mass. 360, 378 (2014).  The judge could find that in the twelve hours before the crash, the defendant had consumed many beers and a shot of whiskey, and

9

that he drank two of those beers and the shot within about an hour before the crash. "Evidence that the defendant was consuming alcohol prior to driving with passengers . . . is patently relevant to whether the defendant exercised reasonable care while driving." Commonwealth v. Woods, 414 Mass. 343, 350 (1993). The defendant argues that this case is distinguishable from Woods, because here, "alcohol impairment played no role in the accident." The argument is unavailing, because it fails to consider the facts in the light most favorable to the Commonwealth.

The defendant argues that the conviction amounted to improper application of res ipsa loquitur in a criminal case because it was based on conjecture about how the crash occurred. See Aucella, 406 Mass. at 418 (where defendant struck pedestrians and left scene, evidence insufficient to prove he "was either negligently inattentive or driving in an otherwise negligent manner"). On the contrary, "this was not a case where the Commonwealth relied on 'the mere happening of [an] accident' to prove negligent operation." Howe, 103 Mass. App. Ct. at 358-359, quoting Commonwealth v. Angelo Todesca Corp., 446 Mass. 128, 144 (2006). After careful review of the evidence, we conclude that it was sufficient to support a finding that the

10

defendant operated his SUV negligently so as to endanger human life.

2. <u>Consciousness of guilt</u>.  The defendant argues that the judge erred in instructing herself on consciousness of guilt. "An instruction on consciousness of guilt may be given where 'there is an "inference of guilt that may be drawn from evidence of flight, concealment, or similar acts," such as false statements to the police [or] destruction or concealment of evidence.'"  <u>Commonwealth</u> v. <u>Morris</u>, 465 Mass. 733, 737-738 (2013), quoting <u>Commonwealth</u> v. <u>Stuckich</u>, 450 Mass. 449, 453 (2008), quoting <u>Commonwealth</u> v. <u>Toney</u>, 385 Mass. 575, 584 & n.4 (1982).

After the close of evidence, the prosecutor asked the judge to draw an inference of consciousness of guilt from evidence including that the defendant asked if the paramedic would draw his blood and later left the hospital soon after arriving, without being treated, and against medical advice.  The prosecutor also contended that the judge could draw an inference of consciousness of guilt from the defendant's father's testimony that, from the hospital, the father telephoned a lifelong friend who was a judge and who gave him the names of two attorneys.  In response, defense counsel argued that the inference that the defendant had fled from the hospital was not

11

reasonable, based on his father's testimony that he spoke to a police officer before leaving.  Defense counsel also argued that the defendant had no obligation to provide a blood sample.

The judge commented that she had reviewed Instruction 3.580 of the Criminal Model Jury Instructions for Use in the District Court (2009).  The judge noted that the model instruction stated that when a request is made for a consciousness of guilt instruction, "it [is] required when there is some evidence" of consciousness of guilt.  The judge explained, "I'm not saying that I find that evidence at all to be compelling, but I am going to consider it," and "I'm not saying . . . what I'm going to do with it."  The defendant objected to the judge's ruling, but not to the language of the instruction.[3]  Cf. Commonwealth v. Tu Trinh, 458 Mass. 776, 779 (2011) (defendant objected both to giving consciousness of guilt instruction and its language).

---

[3] Instruction 3.580 cautions that there may be numerous explanations, other than feelings of guilt, for why an innocent person might act suspiciously.  See Toney, 385 Mass. at 585.  In instructing a jury on consciousness of guilt, a judge must caution them "that they are not to convict a defendant on the basis of flight or concealment alone . . . and that they may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant."  Id. at 585.  The defendant has not argued, in the trial court or on appeal, that the judge's instruction to herself was inappropriately worded, and so we do not consider that issue.

Because the defendant preserved his objection to the ruling, we consider whether it amounted to prejudicial error. Id.

We agree with the defendant that the trial prosecutor's argument that consciousness of guilt could be inferred from the father's telephone call to obtain a referral to an attorney improperly impinged on the defendant's constitutional right to counsel.[4] Cf. Commonwealth v. Pytou Heang, 458 Mass. 827, 853 (2011) (risk that jury would improperly consider evidence that defendant invoked right to counsel diminished by judge's admonitions to jurors). However, we "apply a presumption that a judge sitting in a jury-waived trial has instructed [her]self properly on the law," Commonwealth v. Graziano, 96 Mass. App. Ct. 601, 608 (2019), including "not [to] draw any negative inference from the defendant's exercise of . . . his right to counsel," Pytou Heang, supra. Accordingly, in assessing whether there was a sufficient basis for a consciousness of guilt instruction, we disregard the evidence of the father's telephone call. We conclude that there was other evidence of the defendant's consciousness of guilt sufficient to warrant the instruction. See Commonwealth v. Addy, 79 Mass. App. Ct. 835,

---

[4] On appeal, the Commonwealth concedes that the fact that the defendant sought counsel cannot support a consciousness of guilt instruction.

13

841-842 (2011) (judge improperly allowed Commonwealth's motion to consider defendant's default on trial date as evidence of consciousness of guilt, but error not prejudicial in circumstances).

The trial prosecutor argued that the judge could consider as evidence of "flight" that the defendant abruptly left the emergency room without being treated after having asked the paramedic if his blood would be taken. We consider that evidence not so much as showing flight, but more accurately showing the defendant's concealment of evidence, i.e., his blood alcohol level. We note that the inference is strengthened by evidence that two days later, the defendant sought treatment for his injuries from a different hospital. See Commonwealth v. Cole, 473 Mass. 317, 326 (2015) (evidence that defendant, using false name, was treated for stab wound at hospital showed consciousness of guilt).

There was other evidence before the judge, not mentioned by the trial prosecutor in his consciousness of guilt argument, that supported such an instruction. The judge could infer that the defendant made false statements to police when he told Trooper Hernandez that another vehicle was involved in the collision, then told Lieutenant Lupien that he did not know how the crash occurred. See Reynolds, 67 Mass. App. Ct. at 221

14

(false statements to medical personnel and police).  The judge could also infer that the defendant was attempting to conceal evidence of his drinking alcohol when he told the paramedic that he and the victim were coming "straight" from the golf tournament and he "hadn't had a drink in a couple hours," even though nine minutes before the crash, he left the restaurant where, within about an hour, he had consumed two beers and a shot of whiskey.  See id. (false statements to medical personnel and police about consumption of medication); Commonwealth v. Geisler, 14 Mass. App. Ct. 268, 274 & n.7 (1982) (false statements about whereabouts after crash).  Based on that evidence, it was within the judge's "sound discretion" to consider consciousness of guilt even though the

prosecutor did not marshal those facts in his argument.

Commonwealth v. Simmons, 419 Mass. 426, 436 (1995).

Judgment affirmed.

By the Court (Shin, Grant &
  Hershfang, JJ.[5]),

Clerk

Entered:  October 6, 2025.

---

[5] The panelists are listed in order of seniority.